751 So.2d 302 (1999)
Helga J. KELLY
v.
Roger RILES and National Tea Company.
No. 99-CA-601.
Court of Appeal of Louisiana, Fifth Circuit.
December 15, 1999.
*305 John D. Rawls, John J. Sullivan, New Orleans, Louisiana, Attorneys for Appellant Helga T. Kelly.
Gregory P. DiLeo, Michael D. Meyer, New Orleans, Louisiana, Attorneys for Appellees Roger Riles and National Tea Company.
James S. Rees, III, Covington, Louisiana, Attorney For Appellee, General Accident Insurance.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
In this personal injury lawsuit, after a jury trial, the defendants were found not negligent in causing plaintiffs injuries. For the following reasons, we affirm.
On March 23, 1994, plaintiff, Helga I. Kelly, filed suit against defendants, Roger Riles and National Tea Company. National owned and operated a Canal Villere grocery store on Williams Boulevard in Jefferson Parish, where plaintiff claimed she was injured. Plaintiff alleged that Mr. Riles, a National store manager, injured plaintiffs left wrist when he struck her with a shopping cart which he pulled past her in the store. Plaintiff further alleged that her wrist injury developed into carpal tunnel syndrome, and that as a result, her condition progressively worsened, and she eventually developed reflex sympathetic dystrophy, a chronic pain syndrome which has rendered her totally disabled, at times unable to walk, and in almost constant pain.
The matter proceeded to a seven-day jury trial beginning on July 20, 1998, and ended with a verdict in favor of defendants on July 28, 1998. The trial court adopted the jury verdict and entered it as a judgment of the court on July 31, 1998. The trial court thereafter denied plaintiffs motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial. This appeal ensued, with plaintiff asserting eight assignments of error.
In plaintiff's first and second assignments of error, plaintiff alleges that the trial court erred "by entering a judgment enforcing an illogical and inconsistent jury verdict," and further erred by not granting plaintiffs motions for judgment notwithstanding the verdict or for new trial. The jury interrogatories, executed by the jury foreperson at the close of deliberations, and filed into the record herein, provide the following:
In regard to the incident in Canal Villere on June 15, 1993:
1) Was the plaintiff, Helga Kelly injured?
 Yes &check; No ____
2) Were the defendants negligent?
 Yes ____ No &check; 
Because the jury's answer to interrogatory number two was "no," the interrogatories instructed the foreperson to sign and date the form and return it to the courtroom. The jury therefore did not have to address the remaining five questions on the form, which included proximate cause and comparative fault.
*306 In her appeal, plaintiff alleges that the jury returned an inconsistent verdict by finding that the plaintiff was injured, but that the defendants were not negligent. Plaintiff asserts that since the plaintiff was the only witness who testified about her accident at trial, and that since the jury found that she sustained some injury, the jury must have believed her version of events, which included the defendant, Roger Riles, being negligent. We disagree.
The standard negligence analysis under La. C.C. art. 2315 is the duty-risk analysis. Under this analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, that the defendant owed a duty of care to the plaintiff, that the requisite duty was breached by the defendant, and that the risk of harm was within the scope of protection afforded by the duty breached. Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. Mathieu v. Imperial Toy Corporation, 94-0952 (La.11/30/94), 646 So.2d 318; Mart v. Hill, 505 So.2d 1120 (La.1987).
Whether a duty is owed is a question of law. Whether a defendant has breached a duty owed is a question of fact. In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993) (citations omitted).
In this matter, our review of the record shows that the jury was thoroughly charged by the trial court on the definition of negligence, and that the jury gave due consideration to whether defendants were negligent. In fact, during their deliberations, the jury sent a note to the trial judge, asking if it was possible to find that the plaintiff sustained an injury, but that the defendants were not negligent in causing the injury. After conferring with counsel for both sides, the trial judge called the jury back into the courtroom and re-read the definition of negligence to the jury, which provided in pertinent part: "negligence is the failure to exercise reasonable care towards another person to whom a duty to exercise reasonable care is owed."[1]
After a thorough review of the record herein, it is clear that the jury found, based on the plaintiffs version of events, that the store manager, Roger Riles, was exercising reasonable care when the accident took place, and therefore did not breach the duty he owed to the plaintiff. In other words, the jury found that by pulling the shopping basket past the plaintiff, Mr. Riles did not expose the plaintiff to an unreasonable risk of injury or harm. We find this to be a reasonable conclusion, especially considering the fact that the plaintiff testified that the impact from the shopping cart with her left wrist was not so strong as to cause her to drop the cake which she was holding in her left hand, the questionable nature and extent of plaintiffs injuries, and plaintiffs credibility, which was called into doubt on cross-examination.
Therefore, it was not inconsistent for the jury to find that an injury occurred, but that the defendants were not negligent in causing the injury.[2] As stated, all four inquiries in the duty-risk analysis must be affirmatively answered for the plaintiff to recover. In this matter, although the jury found that an injury occurred, it did not *307 find that the defendants breached their duty to the plaintiff. Accordingly, the trial court correctly adopted the jury verdict as a judgment of the court and did not err in denying plaintiff's motions for judgment notwithstanding the verdict and for new trial.
In plaintiff's third assignment of error, plaintiff argues that defense counsel's "opening statement and closing argument were so inflammatory and prejudicial as to deny the appellant a fair trial before an impartial jury." The remarks of which plaintiff complains in defendants' opening statement include the following comments made by defense counsel:
This is unbelievable. This is why a loaf of bread costs two bucks, because grocery stores have to pay to defend[interrupted by an objection].
* * *
If you think than an alleged bump on the wrist led to all of her left wrist problems, and it makes even less sense that an alleged bump on the wrist makes [interrupted by an objection].
* * *
So this claim is highly suspicious. And the evidence will show [interrupted by an objection].
* * *
So at the end of this case when we talk again and the plaintiff asks you for money for the plaintiff's injuries, this is not the lottery. It is not the way these cases work. [interrupted by an objection].
* * *
National asks you to prevent lawsuit abuse and make her prove her case. [interrupted by an objection].
After the final cited objectedto comment, the trial judge gave the following admonition to the jury:
All right. Disregard counsel's statements about that. That is argument. It is speculation. It has nothing to do with the facts in this case. You are to determine your your determination is to base them on the facts as you find them in this case.
In this assignment of error, plaintiff also asserts that comments made by defense counsel in closing argument were inflammatory. The comments include a remark by defense counsel that if "we just give all the money to anybody who wants it just because they say they are hurt, without any proof of why," ... "then, I guess we can go out and we can spend forty bucks for a loaf of bread, because the whole system would fall apart." Plaintiff claims that defense counsel's opening remarks that claims such as the plaintiff's are why a loaf of bread costs "two bucks," coupled with defense counsel's closing remark that if plaintiff was given the amount she sought in judgment, that a loaf of bread would cost "forty bucks," "were part of a deliberate plan to poison the jury with prejudice."
It is well settled that litigants are entitled to a fair trial on the merits of the case not influenced by appeals to passion and prejudice. Counsel should limit their arguments to the evidence admitted and the inferences that may be properly drawn from it. Ogletree v. Willis-Knighton Memorial Hosp., 530 So.2d 1175, 1181 (La.App. 2 Cir.), writ denied, 532 So.2d 133 (La.1988).
The test of whether argument of counsel is prejudicial or inflammatory is whether such comment is unreasonable or unfair in the eyes of the law. When the language used is such as discloses a studied purpose to arouse the prejudices of the jury based on facts not in the case, the court cannot overlook it or consider that a party against whom such effort has been made has had a fair consideration of its case at the hands of the jury.
*308 Temple v. Liberty Mutual Ins. Co., 316 So.2d 783, 793 (La.App. 1 Cir.1975), rev'd in part on other grounds, 330 So.2d 891 (La.1976) (quoting 88 C.J.S. Verbo Trial § 187, pp. 371-373).
This test is balanced against the well-settled jurisprudence that counsel has great latitude in argument before a jury. This latitude is subject to regulation and control by the court who has a duty to confine argument within proper bounds. Temple v. Liberty Mutual Ins. Co., 330 So.2d at 894. The trial judge is vested with broad discretion in conducting trials in a manner which he determines will be conducive to justice. Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141, 1150-1151 (La.App. 1 Cir.), writs denied, 623 So.2d 1335, 1336 (La. 1993), cert. denied, 510 U.S. 1094, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994).
In this matter, we find that the above-cited comments by counsel for the defense were improper and did appeal to passion and prejudice. We also find that these comments were completely unnecessary. As stated, the extent of plaintiffs claimed injuries, which resulted from her being knocked on the wrist, were questionable. For example, one of plaintiffs own treating physicians, Dr. Elizabeth Kinsley, a board certified general surgeon who practices as a plastic reconstructive hand surgeon, and who performed the carpal tunnel release on plaintiffs left hand, testified that not only does plaintiff not suffer from reflex sympathetic dystrophy, but that plaintiff's carpal tunnel syndrome was more likely than not related to her twenty years of typing at her secretarial jobs, and not to the shopping basket incident.
Moreover, defense counsel's objectionable statements were subject to corrective measures. Counsel for the plaintiff objected to the majority of the complained-of comments as soon as they were made. These objections were sustained by the trial court. Additionally, as stated above, near the end of defense counsel's opening statement, the trial court admonished the jury to "[d]isregard counsel's statements about ... argument [and] speculation. It has nothing to do with the facts in this case." Furthermore, the trial court instructed the jury prior to opening statements and after closing arguments that the statements of counsel were not evidence. The court further instructed the jury that their determinations were to be based solely on the evidence and not upon the statements or suggestions of the attorneys.
We also note that at the hearing on plaintiffs motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial, the trial court made the following comments regarding the defense counsel's remarks:
I don't like the inflammatory statements. I think I warned the jury. After seeing the whole trial, I don't think those statements were so sufficient because they were so small in the whole context and if we had some in the opening statement and ... hearing the closing arguments seven days later, it wasn't a constant barrage. I don't think that they were of such a nature that should cause a new trial.
After a thorough review of the record, we find that defense counsel's comments were not so inflammatory as to affect the jury's verdict. We further find that the trial court's admonitions and instructions to the jury served to counteract any adverse effects of defense counsel's unnecessary comments.
Plaintiffs fourth, fifth and six assignments of error concern videotaped surveillance of plaintiff, which was admitted into evidence at trial. On appeal, plaintiff claims that the trial court erred by ignoring its own "law of the case doctrine" in reversing an earlier ruling on the videotapes, erred by not conducting a sufficient inquiry on the admissibility of the videotapes, and erred by admitting the videotapes without any foundation testimony from the videographer.

*309 The law of the case principle is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Louisiana Land and Exploration Co. v. Verdin, 95-2579, pp. 3-4 (La.App. 1 Cir.9/27/96); 681 So.2d 63, 65, writ denied, 96-2629 (La.12/13/96); 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997). It applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Brumfield v. Dyson, 418 So.2d 21, 23 (La.App. 1 Cir.), writ denied, 422 So.2d 162 (1982). The reasons for the law of the case doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Louisiana Land and Exploration Co. v. Verdin, 95-2579 at 4; 681 So.2d at 65.
Jones v. McDonald's Corp., 97-2287 (La. App. 1 Cir.11/6/98), 723 So.2d 492, 494.
In the matter before us, plaintiff cites to a bench conference among all counsel and the trial court during the initial stage of defense counsel's cross-examination of plaintiff. References to the videotaped surveillance of plaintiff had already been made during direct examination of plaintiff, and plaintiff testified that she was able to perform the activities depicted on the videotapes, albeit, in varying degrees of pain. Just prior to the bench conference, on cross-examination, the following colloquy between defense counsel and the plaintiff took place:
Q. You were asked by your attorney about the surveillance tapes. You've seen the surveillance tapes that National has taken of you, haven't you?
A. Yes.
Q. You've seen the surveillance tapes of you hammering up boards from your fence, haven't you?
A. Yes.
Q. You've seen surveillance of you carrying groceries?
A. Yes.
Q. You've seen surveillance of yourself walking?
A. Yes.
Q. You've seen surveillance of yourself bending over?
A. Yes.
Q. You've seen surveillance of yourself stringing your house with Christmas lights?
A. I saw a surveillance tape where I was stringing some Christmas lights. Yes.
Q. Okay. And you saw surveillance of you going to the doctor on January 31st and using the cart to go to Dr. Soong's office, but an hour later going to the auto parts place, walking without the cart?
A. That's correct.
Q. And then about twenty minutes later back at your house, using the cart to get from the car to your house?
A. Yes.
Q. All those tapes that you saw, were those tapesthat was you in those tapes?
A. Yes.
Q. Did those tapes accurately show what was in the videos?
A. What do you mean, what was in the videos?
Q. Well, if you look at a picture of a tree and someone says "Is this an accurate depiction of this tree?"
MR. RAWLS [counsel for the plaintiff]:
Your Honor, may we approach?
*310 A lengthy discussion at the bench ensued regarding when and under what conditions defense counsel would be able to show the videotapes. The bench conference concluded with the trial court ruling that defense counsel would have to develop his case further and lay a proper foundation before he could impeach the plaintiff with the videotapes.
Defense counsel thereafter cross-examined the plaintiff on other aspects of the case. Two days later, after taking three medical witnesses out of turn, cross-examination of the plaintiff resumed. At the conclusion of his cross-examination, defense counsel moved that he be allowed to show the videotapes to the jury. At another bench conference, the trial court ruled that since the plaintiff admitted to being the individual performing the specific instances of work depicted on the videotapes, that no videographer would need to be called to authenticate the videotapes as those taken of the plaintiff. The trial court also ruled that the videotapes could be shown to the jury for impeachment purposes, especially considering the videotape which showed the plaintiff requiring the use of a motorized scooter only when coming from or going to her house and her doctor's office, but not in the interim when she stopped at an automobile mechanic's shop.
Upon review, we find that the trial court did not ignore the "law of the case doctrine" in ruling that the videotapes were admissible. The trial court never ruled that the videotapes were inadmissible, only that defense counsel would have to develop his case further before the court would allow the videotapes to be shown to impeach plaintiff's prior testimony.
Plaintiff also argues that the trial court erred by failing to weigh "the factors favoring admission versus the factors against admission" of the videotapes and further erred by admitting the videotapes into evidence "without any foundation testimony from the videographers." In both of these arguments, plaintiff cites this Court's holding in Bolden v. Jeffrey's Steel Co., Inc., 96-518 (La.App. 5 Cir. 12/11/96), 684 So.2d 1102, 1105-06, writ denied, 97-0418 (La.3/27/97), 692 So.2d 399:
The determination of whether motion pictures or videotapes are admissible is largely within the discretion of the trial court. Olivier v. LeJeune, 95-0053 (La.2/28/96), 668 So.2d 347. Lafleur v. John Deere Co., 491 So.2d 624, 632 (La. 1986). Determination of the admissibility into evidence of videotapes must be done on a case-by-case basis depending on the individual facts and circumstances of each case. Douglas v. G.H.R. Energy Corp., 463 So.2d 5, 7 (La.App. 5th Cir.1984). The trial court must consider whether the videotape accurately depicts what it purports to represent, whether it tends to establish a fact of the proponent's case, and whether it will aid the jury's understanding. Against those factors, the trial court must consider whether the videotape will unfairly prejudice or mislead the jury, confuse the issues, or cause undue delay. The trial court may exclude the evidence if the factors favoring admission are substantially outweighed by the factors against admission. Louisiana Code of Evidence articles 401-403; Malbrough v. Wallace, 594 So.2d 428, 431 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992); U.S. F.& G. v. Hi-Tower Concrete Pumping, 574 So.2d 424 (La. App. 2nd Cir.1991), writs denied, 578 So.2d 136, 137[ (La.1991)]; Burk v. Illinois Central Gulf Railroad Co., 529 So.2d 515 (La.App. 1st Cir.), writ denied, 532 So.2d 179 (La.1988).
As previously noted in the context of a worker's compensation case, evidence in the form of moving pictures or videotapes must be approached with great caution because they show only intervals of the activities of the subject, they do not show rest periods, and do not reflect whether the subject is suffering pain during or after the activity.

*311 Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65, 68 (La.1983).
Therefore, although videotapes might generally be admissible, they are to be viewed cautiously. However, in the instant case, there is a problem with the lack of a proper foundation being laid for the introduction of this tape into evidence.
Harris, the person from the investigative firm who testified in court, was not the person who took the video film. He testified that once the film is turned over to his office by the investigator, it is kept in his office and copied, with only minor editing, for the client. But there was no one present to testify concerning the actual filming. In other words, no one appeared in court to testify with first hand information concerning the making of the tape. Plaintiff's counsel objects to this as well as to the introduction into evidence of only a copy of the tape and not the original. Although defense counsel had the original in court and offered to show it to the judge, only the copy was introduced into evidence. Under La. C.E. art. 1002, to prove the content of a photograph, or in this instance a videotape, the original is required. The authenticity of the duplicate copy was contested by plaintiff.
The admissibility of a videotape must be determined on a case by case basis. Considering the initial suspect nature of such videotapes, we find it of particular concern, in this case, that the person who took the pictures or made the videotape was not present to testify. Harris, who testified concerning the admission of the tape into evidence, could only testify concerning what happened to the tape after it came into his possession. But he could not testify concerning any of the circumstances of how the tape was made, for example, why there was only 20 minutes of video for a two day surveillance.
Further, the hearing officer allowed the admission into evidence of the duplicate rather than the original, where the authenticity of the duplicate had been called into question by plaintiff. Additionally, it became apparent at trial that there was other videotape taken by this investigative agency, on a different date, that was not turned over to plaintiff pursuant to a timely discovery request. Accordingly, after considering the factors for and against admission of the videotape into evidence, as set out above, we find that the hearing officer erred, in this case, in admitting the duplicate copy of the videotape into evidence.
The matter before us today is distinguishable from Bolden. While in both cases the videotapes show the claimant/plaintiff performing work which belies their claims of disability and pain, the matter before us is a personal injury case where the very nature and extent of the plaintiff's injuries was called into serious doubt at trial prior to the videotapes being shown. Further, the plaintiff herein has not questioned the authenticity of the videotapes. In fact, plaintiff admitted that it was her in the videotapes, and she testified at length, on both direct and cross-examination, about her activities portrayed in the videotapes. Moreover, plaintiff has cited no authority for a requirement that the person who filmed the videotapes testify at trial in order for the videotapes to be properly admitted. Accordingly, we find that the trial court did not err by not requiring the videographer to testify prior to the videotapes' admission.
Upon review, we further find that the trial court conducted a sufficient inquiry regarding the admissibility of the videotaped surveillance of the plaintiff. The trial court's ruling was made after four days of testimony, where the nature and extent of plaintiff's injuries was called into serious doubt, and after a lengthy cross-examination of plaintiff, where her credibility was also called into doubt.
As stated, the determination of whether videotaped surveillance is admissible at trial *312 is largely within the discretion of the trial court. In this matter, the trial court did not abuse that discretion.
Finally, plaintiff argues on appeal that because of the complained-of errors committed by the trial court, this Court should conduct a de novo review of the record and award plaintiff reasonable damages. As we have thoroughly reviewed the record and found that the trial court did not err, a de novo review and award of damages is not warranted.
Accordingly, for the foregoing reasons, the judgments of the trial court, adopting the July 28, 1998 jury verdict and denying plaintiff's motion for judgment notwithstanding the verdict, or in the alternative, motion for new trial, are hereby affirmed. Costs of this appeal are assessed against plaintiff/appellant.
AFFIRMED.
NOTES
[1] It bears noting that counsel for the plaintiff did not object to the jury charge regarding negligence, and in fact, agreed that the charge should be re-read to the jury in response to the jury's question concerning an injury with no negligence. Further, counsel for the plaintiff did not object to the jury interrogatories, where the plaintiff's injury and the defendants' negligence were to be separately decided.
[2] See also Thielmier v. Louisiana Riverboat Gaming Partnership, 31,739 (La.App. 2 Cir.3/31/99), 732 So.2d 620.