906 So.2d 484 (2005)
Fannie and Lucian CUSIMANO
v.
WAL-MART STORES, INC.
No. 2004 CA 0248.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
*485 Vincent J. Lobello, Slidell, Counsel for Plaintiffs/Appellants Fannie and Lucian Cusimano.
Roy C. Beard, James C. Rather, Jr., Metairie, Counsel for Defendant/Appellee Wal-Mart Stores, Inc.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GUIDRY, J.
An elderly couple appeals an adverse judgment denying their claims for personal injuries and loss of consortium against a merchant based on the wife's fall.

FACTS AND PROCEDURAL HISTORY
As a treat on her 88th birthday, Fannie Cusimano decided to get her hair done in the beauty salon located in the Wal-Mart store on Highway 190 in Covington while her husband, Lucian Cusimano, did the grocery shopping. The couple agreed that after getting her hair done, Mrs. Cusimano would wait at the front of the store near the registers for Mr. Cusimano. On completing the shopping, Mr. Cusimano pushed his shopping cart next to register *486 number six for a cashier to tally up his purchases. Shortly before he finished placing his selected items on the counter to be scanned, Mrs. Cusimano walked up to the register. Upon her arrival, Mrs. Cusimano attempted to give Mr. Cusimano a credit card to pay for the selected items, but he refused the offer. Mrs. Cusimano then hung her walking cane on the corner of the shopping cart handle, in order to place her credit card back in her purse. In the meantime, the cashier, who had completed scanning and bagging the selected items, walked from behind the register to place some of the bags into the shopping cart and after doing so, she moved the shopping cart closer to the register to facilitate loading the remaining bags into the cart. After the cashier began to move the shopping cart closer to the register, Mrs. Cusimano reached toward the shopping cart to retrieve her walking cane, lost her balance, and fell to floor, breaking her right hip.
As a result of the fall, the Cusimanos filed suit against Wal-Mart Stores, Inc. (Wal-Mart) for Mrs. Cusimano's pain and suffering and for Mr. Cusimano's loss of consortium. Wal-Mart denied any liability for the accident and the matter proceeded to trial. After hearing the testimony of several witnesses, including the Cusimanos, and viewing a videotape of the incident, a jury found no negligence on the part of Wal-Mart and rendered a verdict accordingly. The Cusimanos filed a motion for judgment notwithstanding the verdict or in the alternative, for new trial, which was denied by the trial court. This appeal followed.

ASSIGNMENTS OF ERROR
On appeal, the Cusimanos assert that the jury and the trial court clearly erred as follows:
1. The jury's verdict finding that Wal-Mart Stores, Inc., through its employee was not negligent was manifestly erroneous and clearly wrong.
2. The trial court committed manifest error in failing to grant appellants' Motion for Judgment Notwithstanding the Verdict (JNOV) on the issue of appellee's liability.
3. The trial court committed manifest error in failing to grant appellants' Motion for Judgment Notwithstanding the Verdict (JNOV) on the issue of damages.

DISCUSSION
In their first assignment of error, the Cusimanos contend that the trial jury erred in failing to find Wal-Mart at fault in causing Mrs. Cusimano to fall based on the actions of its employee. Under La. C.C. art. 2315, liability for damages is founded upon fault. Whether or not fault exists depends upon the facts and circumstances presented in each particular case. A common sense test is to be applied in determining the question of fault. The test is how would a reasonably prudent man have acted or what precautions would he have taken if faced with similar circumstances and conditions. The degree of care to be exercised must always be commensurate with the foreseeable dangers confronting the alleged wrongdoer. Vernon v. Allstate Insurance Company, 268 So.2d 328, 330 (La.App. 2nd Cir.1972).
Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of La. C.C. art. 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform *487 to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) whether the plaintiff was damaged (the damages element). Benjamin ex rel. Benjamin v. Housing Authority of New Orleans, 04-1058, p. 7 (La.12/1/04), 893 So.2d 1, 6; Boland v. West Feliciana Parish Police Jury, 03-1297, p. 8 (La.App. 1st Cir.6/25/04), 878 So.2d 808, 815, writ denied, 04-2286 (La.11/24/04), 888 So.2d 231. A negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corporation, 94-0952, p. 11 (La.11/30/94), 646 So.2d 318, 326.
In the matter before us, the jury was not queried regarding the individual elements of the negligence charge, but rather was queried only on the ultimate determination of "[w]as Wal-Mart Stores, Inc., through its employee, negligent?" The jury's response was "no." Thus, we must review the individual elements of the duty-risk analysis to determine whether the jury's verdict was proper.
The threshold question in any duty-risk analysis is whether the defendant owed a duty to the plaintiff. Whether a duty is owed is a question of law. Bezet v. Original Library Joe's, Inc., 01-1586, p. 9 (La.App. 1st Cir.11/8/02), 838 So.2d 796, 800. Simply put, the inquiry is whether a plaintiff has any law  statutory, jurisprudential, or arising from general principles of fault  to support his or her claim. Boland, 03-1297 at 9, 878 So.2d at 815-816. Our courts have held in general that the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. Kelly v. Riles, 99-601, pp. 3-4 (La.App. 5th Cir.12/15/99), 751 So.2d 302, 306, writ not considered, 00-0147 (La.3/17/00), 755 So.2d 893.
At trial, the cashier who scanned and bagged the Cusimanos' purchases, Jessica Reverand, stated that there were several details regarding the incident that she did not remember, but when asked whether she pulled the shopping cart away from Mrs. Cusimano, she responded: "I would not pull the buggy away from Mrs. Cusimano. I would load the buggy up to put the groceries in the buggy, not to just pull it away from her just to pull it away from her, no." Ms. Reverand conceded, however, that she had no reason to disagree with the events as portrayed on a videotape of the incident recorded by Wal-Mart. On questioning, Ms. Reverand testified that if the videotape showed her walking around the register to where the shopping cart was located and pulling the cart forward that was a normal practice. She also testified that the first time she saw Mrs. Cusimano's walking cane was when she observed it on the shopping cart after Mrs. Cusimano had fallen.
Mrs. Cusimano gave the following account of what took place when she fell:
I got up from the bench that I was sitting on and I walked over to the cashier where [Mr. Cusimano] was, and I was getting out my card, my credit card, out of my purse and started to hand it. He said, "I don't need it. I have mine out." So, I get mine back in. And to do that I took the cane  I didn't have three hands. I only had two. So, I took the cane and I hung it on the handle of the buggy and I put my stuff in my purse and turned around and just put my hand out to get my cane and zoom, the buggy was gone.
*488 Mrs. Cusimano testified that she had not touched her cane when the cashier moved the shopping cart, but she was just reaching for the cane and "was leaning sort of forward and the force of my body I guess I just went right down on the floor." During cross examination, Mrs. Cusimano testified that after placing her cane on the shopping cart, she moved over a little bit away from the cart. When asked why she did not move closer to the shopping cart before attempting to retrieve her cane, Mrs. Cusimano at first stated that "I didn't move that much. . . . All I had to do was put my hand out;" however, at an earlier deposition, Mrs. Cusimano testified that she had to lean over and reach for the cane, even before the cashier moved the cart. She denied trying to reach for the cane as the cashier pulled the shopping cart away, but stated "I didn't see her moving it until it was  it was just gone, when I reached for it, it was gone."
Two copies of a surveillance video that recorded the incident were filed into the record. One of the videos is unedited footage that shows four separate checkout lanes being filmed at the same time. The tape commences with Mr. Cusimano approaching and placing his selected items on the conveyor belt of the register that is displayed in the upper right hand corner of the picture. The second videotape is basically comprised of an enlarged, isolated display of that portion of the original film focused on the checkout lane occupied by Mr. Cusimano. In both videotapes, it appears that Mrs. Cusimano turns her head and notices the cashier moving the shopping cart, at which time she leans over and reaches for her cane, loses her balance and falls to the floor.
Based on this evidence, we cannot say that the trial jury was clearly wrong in concluding that Wal-Mart was not negligent, since the evidence does not conclusively indicate that Wal-Mart's employee, Ms. Reverand, failed to exercise reasonable care. The videotapes clearly show that Mrs. Cusimano was neither touching nor using the shopping cart for support at the time the cashier moved it closer to the register. Furthermore, it is apparent from the videotapes that the cashier, who was busy scanning and bagging the Cusimanos' purchases, did not observe Mrs. Cusimano when she hung the walking cane on the shopping cart nor was the cane readily noticeable or detectable from the cashier's vantage point. Ms. Reverand, the cashier, expressly testified that she did not observe the cane hanging from the shopping cart until after Mrs. Cusimano had fallen.
Moreover, the jury could have reasonably accepted Wal-Mart's assertion that it is a "normal" practice for a cashier to move a shopping cart closer to the register when loading purchases into a cart. It is understandable that good customer service would necessitate such action on the part of the cashier rather than instructing the customer to push the shopping cart up to the register or handing the bags to the customer to place in the shopping cart.
Merchants are not insurers of their patrons' safety and a customer is under a duty to use ordinary care to avoid injury. Stewart v. Gibson Products Company of Natchitoches Parish Louisiana, Inc., 300 So.2d 870, 879 (La.App. 3rd Cir. 1974). Furthermore, storeowners are not required to insure against all accidents that occur on the premises. They are not absolutely liable whenever an accident happens. A shopper has the duty of exercising reasonable care for his own safety. Retif v. Doe, 93-1104 (La.App. 4th Cir.2/11/94), 632 So.2d 405, 408, writ denied, 94-1000 (La.6/17/94), 638 So.2d 1095.
In Kelly, a customer filed suit against the grocery store manager and storeowner *489 for injuries she sustained when the store manager struck her wrist with a shopping cart. Kelly, 99-601 at 2, 751 So.2d at 305. The jury in that case rendered a verdict finding that the defendants were not negligent in causing the plaintiff's injury. Kelly, 99-601 at 3, 751 So.2d at 305. The appellate court affirmed the judgment rendered in conformity with the jury's verdict, holding that it was reasonable for the jury to conclude that the store manager did not expose the plaintiff to an unreasonable risk of injury or harm when he pulled the shopping cart past the plaintiff and injured her wrist. Kelly, 99-601 at 4, 751 So.2d at 306.
Likewise, because we find the conclusions of the jury in this case to be reasonable, we reject the Cusimanos' assertion that the jury's verdict was manifestly erroneous or clearly wrong. And in so finding, we pretermit discussion of the remaining assignments of error.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court rendering judgment in conformity with the jury's verdict. All costs in this matter are charged to the appellants, Fannie and Lucian Cusimano.
AFFIRMED.
McCLENDON, J., concurs and assigns reasons.
McCLENDON, J., concurring.
For the following reasons, I respectfully concur. Review on appeal is constrained by the manifest error standard, which demands that findings of fact by the factfinder be given great deference and disturbed only when clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The purpose "for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). Therefore, constrained by the manifest error rule, I cannot find the jury erred.