Judgment rendered July 3, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,694-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DAVID WHITEHEAD                                    Plaintiff-Appellant

versus

WALMART OF LOUISIANA LLC                    Defendant-Appellee
WALMART INC.

* * * * *

Appealed from the
Bossier City Court for the
Parish of Bossier, Louisiana
Trial Court No. 102,086

Honorable Santi A. Parks, Judge

* * * * *

DAVID WHITEHEAD                                    In Proper Person,
                                                   Appellant


BLANCHARD, WALKER, O'QUIN                    Counsel for Appellee,
& ROBERTS, APLC                                Walmart Inc.
By:  Scott R. Wolf


* * * * *

Before ROBINSON, HUNTER, and ELLENDER, JJ.

**ROBINSON, J.**

David Whitehead ("Whitehead"), pro se plaintiff in a personal injury action, appeals the Bossier City Court's granting of summary judgment on July 10, 2023, in favor of defendants, Wal-Mart Louisiana, LLC, and Wal-Mart, Inc. (collectively, "Walmart").

For the reasons set forth below, we AFFIRM the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

On March 7, 2023, Whitehead sued Walmart for injuries he allegedly sustained following an incident on March 19, 2022, in which he collided with another shopper riding a motorized cart in the doorway of the Airline Drive Walmart. Whitehead claimed that Walmart was negligent for failing to adequately protect him from the other shopper and demanded $5,000.00 in damages for his injury. Before filing suit, Whitehead attempted to file a direct claim with Walmart for payment under its applicable insurance policy, but was denied by letter from Walmart dated April 22, 2022, in which Walmart stated that it was not responsible for the incident.

Whitehead originally filed his suit against Walmart in small claims court along with two other separate claims against Speedy Cash and O'Reilly Automotive, but it was later transferred to the regular city court docket and split into separate suits for each defendant.

Whitehead simultaneously moved to dismiss his lawsuit without prejudice, to stay discovery pending resolution of his motion to dismiss, and for the presiding Judge Parks to recuse himself from the case. Whitehead's grounds for recusal were that Judge Parks shared an office with the former

judge who had recused himself from a separate case involving Whitehead, Judge Wilson, that Judge Parks' wife was formerly a member of an organization with opposing counsel, and that Judge Parks' wife had previously obtained a settlement on behalf of her plaintiff client against Walmart and, therefore, had a financial interest in Walmart. The trial court denied Whitehead's motion to dismiss without prejudice because Walmart had already appeared in the case, but noted that even if the case had been dismissed and Whitehead refiled, it would still be transferred to the regular city court docket. Whitehead's motion to stay discovery was granted. The trial court denied the motion to recuse, noting that there was no showing of a conflict of interest merely by identifying that a relationship with certain individuals existed, noting in particular that Judge Wilson merely rented office space from him and no files, staff, or expenses were shared.

On May 30, 2023, Walmart moved for summary judgment on the grounds that it did not owe a duty to Whitehead to protect him from the alleged negligence of third-party customers, and that Whitehead did not articulate any alleged duty; therefore, there would also be no breach. Walmart also alleged that even if there had been some sort of duty and resulting breach, the circumstances of the incident were such that there was no causal connection with Whitehead's injury. The accident was not within the scope of protection, and Whitehead was the actual cause of the injury because he was the one who stepped in front of the motorized cart. Walmart's motion included a video recording of the incident and an affidavit from the assistant store manager stating that, based on her review of the

video, Whitehead actually caused the accident by stepping in front of the shopper riding the motorized cart.

Whitehead filed a cross-motion for summary judgment, alleging the video did not show his accident and that it had been created as part of a coverup for liability. He generally argued that Walmart has a duty to use proper, ordinary care to avoid injuries, and specifically claimed that Walmart failed to conform to its duty of protection by the entrance/exit design by not using wall dividers to separate individuals who entered and exited the store. He also requested that the court inspect Walmart's facilities.

Following a hearing held on June 26, 2023, the trial court granted Walmart's motion, finding Whitehead had not stated any relevant duty owed by Walmart to protect him from the third-party shopper, nor had he provided any evidence of any alleged breach of any duty. Whitehead moved for reconsideration, again asserting that Walmart owed a duty of protection to him that encompassed a safer entrance/exit design, but adding that Walmart also should have employees stationed at the doorways to prevent accidents. He again claimed the video did not show his accident and asked for discovery related to the alleged altering of the video, as well as asked for the court to inspect Walmart's premises. The motion was denied.

During the form and content hearing, Whitehead voiced objections to the judgment on several grounds, mainly reasserting all previous arguments, including the claim that Judge Parks should be recused. All objections were overruled and the signed written judgment was rendered in favor of Walmart on July 10, 2023. Whitehead appealed the judgment on July 11, 2023. He

3

also filed a motion for injunctive relief on December 18, 2023, in which he raised several requests that were essentially arguments on the merits of the case that were subjects of the appeal. This court denied the motion for injunctive relief.

## DISCUSSION

### Standard of Review - Summary Judgment

Appellate courts review summary judgment *de novo*, using the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Shelton v. Standard/700 Associates*, 01-0587 La. 10/16/01), 798 So. 2d 60; *Mackey v. Jong's Super Value No. 2*, 41,440 (La. App. 2 Cir. 9/27/06), 940 So. 2d 118; *Lowery v. Wal-Mart Stores, Inc.*, 42,465 (La. App. 2 Cir. 9/19/07), 965 So. 2d 980. The procedure is designed to secure the just, speedy, and inexpensive determination of actions, and is favored under Louisiana law. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment remains with the mover. La. C.C.P. art. 966(D)(1). However, if the mover will not bear the burden of proof at trial, its burden does not require it to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to his claim. *Id*. If the mover meets this initial burden of proof, the burden shifts to the adverse party to produce factual support sufficient to establish that he will be able to meet his evidentiary burden at trial. *Id*.

4

The adverse party may not rest on the mere allegations in his pleadings in response to a properly made and supported motion for summary judgment; rather, his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If he does not so respond, summary judgment, if appropriate, shall be rendered against him. *Id.*

*Negligence*

Whitehead argues that Walmart was negligent in failing to protect him from the injury he sustained when hit by a motorized shopping cart exiting the store through the entrance door, claiming that Walmart should have had barriers dividing the individuals moving through the store's entrance and exit doors and/or employees directing the movements of individuals going in and out of the doors.

Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of La. C.C. art. 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant failed to conform his conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La. 4/03/02), 816 So. 2d 270; *Lowery, supra.*

Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties.

*Haskins v. State Farm Fire & Cas. Co.*, 612 So. 2d 990 (La. App. 2 Cir. 1993). Proprietors of stores generally have duties to use reasonable care to protect the safety of their patrons, and to avoid exposing them to unreasonable risks of harm. *Mundy v. Dept. of Health and Human Res.*, 620 So. 2d 811 (La. 1993); *Mosley v. Temple Baptist Church of Ruston, La., Inc.*, 40,546 (La. App. 2 Cir. 1/25/06), 920 So. 2d 355; *Pistorius v. Higbee Louisiana, LLC*, 54,780 (La. App. 2 Cir. 2/8/23), 356 So. 3d 1204, *writ denied*, 23-00331 (La. 5/2/23), 359 So. 3d 1290; *Cusimano v. Wal-Mart Stores, Inc.*, 04-0248 (La. App. 1 Cir. 2/11/05), 906 So. 2d 484. However, merchants are not insurers of their patrons' safety and a customer is under a duty to use ordinary care to avoid injury. *Ton v. Albertson's LLC*, 50,212 (La. App. 2 Cir. 11/18/15), 182 So. 3d 246, *writ denied*, 15-2320 (La. 2/5/16), 186 So. 3d 1169; *Mosley*, *supra*; *Pistorius*, *supra*; *Cusimano*, *supra*; *Stewart v. Gibson Prods. Co. of Natchitoches Parish La. Inc.*, 300 So. 2d 870 (La. App. 3 Cir. 1974); *McManus v. Brookshire Grocery Co.*, 09-581 (La. App. 3 Cir. 12/16/09), 2009 WL 4831619. Further, a storeowner's duty does not extend to protecting patrons from the independent actions of non-employee third parties unless there is a special relationship giving rise to such a duty. *Mosley*, *supra*; *Lowery*, *supra*.

Whitehead principally relies on the Third Circuit's holding in *Stewart* to very generally assert that Walmart has a duty of care that would apply to this case. In *Stewart*, the defendants sponsored a Labor Day promotion event that centered around an air drop of 2,400 ping-pong balls that were marked with discounts ranging from 5% to 25% to be used at one of the defendants' four stores, as well as some with cash value. The plaintiff,

6

Stewart, a 70-year-old woman, attended the event. As she was walking to her car after exiting one of the stores, the ping-pong balls were dropped into the parking lot. There were 1,500 to 2,000 people in the parking lot and in the midst of the chaos, Stewart was knocked down and suffered a broken right wrist and broken hip. The trial court awarded damages to Stewart. On appeal, the Third Circuit found that the risk of harm to the plaintiff was within the scope of protection of the duty owed by the defendants; however, the court also found that Stewart was contributorily negligent and was barred from recovery, which was the law at the time of the case.

Whitehead seems to focus on the aspect of the *Stewart* case that the defendants owed a duty of protection to their patrons and that the patron plaintiff was within that scope of protection. He also cites several other cases supposedly in support of the existence of a duty, but provides no accompanying explanation or argument. Upon review of *Stewart* and the other cited cases, it appears that Whitehead refers to them due to their reference to a business' duty of protection of their patrons, while at the procedural juncture of summary judgment, but none are factually or procedurally applicable. For example, in the *Cotton v. Walmart, Inc.*, 54,983 (La. App. 2 Cir. 4/5/23), 361 So. 2d 1084, case cited by Whitehead, this Court held that summary judgment was not proper in a slip and fall case because there remained a factual issue whether the merchant had kept the floors in a reasonably safe condition. First, La. R.S. 9:2800.6, the Merchant Liability Statute, which provides that a merchant owes a duty to persons who use his premises to exercise a reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition, does not apply in

7

this case since the condition of the store is not at issue.  Also, *Cotton* does not involve a situation of third-party liability.

Whitehead offers little to no support as to what he believes Walmart's duty should have been in this case, other than a general reference to protecting its patrons and the claim that the store should have had door dividers and/or an employee monitoring the entrance and exit doors.  In the *Stewart* case, the court found that the merchant defendants had a duty because they created the situation in which it was foreseeable that someone could be injured, such that the risk of harm to the plaintiff was within the scope of protection of the duty owed by the defendants.  Nonetheless, the court also noted that business owners are not insurers of patrons' safety and that customers have a duty to use ordinary care to avoid injury, which was ultimately the reason for the Third Circuit's reversal of the trial court's damage award.

As shown in Walmart's surveillance video, Whitehead originally approached the exit door from outside to enter the store, but swiftly moved to the other door – possibly from the first door not opening quickly enough. Just as he was attempting to enter through the entrance door, the unknown customer on the motorized cart was exiting through the same door, seemingly at an angle from the first set of exit doors closest to the interior, and the two collided.  The customer on the motorized cart continued into the parking lot, and after stopping for a moment to look at the person on the cart, Whitehead continued into the store.  He did not fall and appeared to walk normally after the incident.

The degree of care exercised must be commensurate with foreseeable damages confronting the alleged wrongdoer. *Cusimano*, *supra*; *Vernon v. Allstate Ins. Co.*, 268 So. 2d 328 (La. App. 2 Cir. 1972). In this case, it is not foreseeable that someone could be injured because of the lack of door dividers or not having an employee to monitor foot traffic in the doorways. The incident in which Whitehead claims to have been injured happened quickly and could not have been prevented by an employee. It is possible that door dividers could have prevented this specific incident, but it is equally possible that they could have created other risks.

Most importantly, Whitehead had a responsibility for his own safety. Had he originally walked straight into the entrance door instead of making an abrupt lateral move from the exit door he first attempted to enter (ironically the same misuse he argues Walmart had an obligation to protect against), he would have had much better visibility of anyone exiting through the entrance door and been able to avoid the collision.

Even if Walmart had some sort of duty to monitor the ingress and egress of its patrons and to install the dividers, the failure to do so is not the cause of Whitehead's injury. Courts have rejected similar claims as to both the duty and breach elements in other cases. In *McManus*, *supra*, a supermarket was not liable for an injury received by the plaintiff when she was struck by a motorized cart driven by another customer. The plaintiff argued that Brookshire was negligent in failing to instruct patrons on the proper use of the carts and failure to adequately supervise the patrons. In granting Brookshire's summary judgment motion, the court found there was no causal relationship between the failure to instruct patrons on the use of

9

the motorized shopping carts and the incident, which was actually caused by the patron's walking cane engaging the motor.

In *Lowery*, *supra*, the plaintiff customer was leaving the women's restroom when she was hit by the door that had been abruptly opened by four young boys running in after mistaking it for the men's restroom. She argued that Walmart was negligent for failing to provide a restroom door that would not slam in a person's face, failing to properly monitor the children, allowing the children to run in the store, and failing to post signs warning that children were allowed to run in the store. Walmart filed a motion for summary judgment maintaining that it was not responsible for the supervision and control of minor children who may accompany a parent/guardian into its store. The trial court granted Walmart's motion and this Court affirmed. This Court found that Lowery offered no evidence to indicate that Walmart was put on notice of the children's rowdy behavior or that their behavior was endangering patrons, and noted that it would be virtually impossible for Walmart to police the actions of every child in the store, with as large as the store was and serving clientele that often includes families with young children. It found that to impose a duty on Walmart to protect patrons from rambunctious children would be unduly burdensome and that such a duty lay with the guardians of the children.

It is also noteworthy that Whitehead introduced as an exhibit to his petition and subsequent pleadings a one-page medical record from the emergency department of Shreveport VAMC in support of his claim for injury and damages. The discharge diagnosis was simply "hip pain," with instructions to follow up with a primary care provider. No other medical

documentation was provided, nor any itemized bills for medical expenses incurred to support the $5,000 claim for damages.

Walmart had no duty to protect against the type of incident that allegedly caused Whitehead's injury. There were no unreasonable risks of harm created by the setup of the entrance and exit doors or the lack of an employee stationed there to monitor the doorways. Louisiana jurisprudence is clear that merchants are not insurers of their patrons' safety and a customer is under a duty to use ordinary care to avoid injury. Whitehead was as much at fault for the incident in question due to the way he entered the entrance door by a swift lateral move from the exit door that he had first attempted to enter, and by not generally being aware of those exiting through the entrance door as was customary for patrons. Further, a storeowner's duty does not extend to protecting patrons from the independent actions of non-employee third parties unless there is a special relationship giving rise to such a duty. No Walmart employees were involved in the incident or were put on notice of any improper activity of their patrons. A third-party patron on a motorized cart exited the store through the entrance doors and collided with Whitehead. This was a sudden event caused by the fault of both Whitehead and the third-party patron that would not have been reasonably preventable by Walmart. In addition, it does not appear that Whitehead has provided proof of actual damages.

Walmart has met its burden by successfully pointing out that there is an absence of factual support for not just one, but *all* of the elements essential to Whitehead's negligence claim. Whitehead failed to meet his burden of producing factual support sufficient to establish that he will be

11

able to meet his evidentiary burden at trial. There is no genuine issue of material fact as to Whitehead's negligence claim and Walmart is entitled to summary judgment.

*Recusal*

Whitehead argues that the trial court judge should not have presided over his case due to several conflicts of interest – that Judge Parks shared an office with the former judge who had recused himself from a separate case involving Whitehead, Judge Wilson; Judge Parks' wife was formerly a member of an organization with opposing counsel; and Judge Parks' wife had previously obtained a settlement on behalf of her plaintiff client against Walmart and, therefore, had a financial interest in Walmart.

La. C.C.P. art 154 provides:

> A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.

La. C.C.P. art. 151 provides the grounds upon which a judge shall be recused from a matter, specifically, in pertinent part, as follows:

> A. A judge of any court, trial or appellate, shall be recused when he ...
>
> (4) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings.

The grounds for recusal enumerated in La. C.C.P. art. 151 are exclusive and do not include a "substantial appearance of the possibility of

12

bias" or even a "mere appearance of impropriety" as causes for removing a judge from presiding over a given action. *In re Commitment of M.M.*, 53,577 (La. App. 2 Cir. 9/23/20), 303 So. 3d 1095; *Slaughter v. Bd. of Sup'rs of S. Univ. & Agr. & Mech. Coll.*, 10-1114 (La. App. 1 Cir. 8/2/11), 76 So. 3d 465, *writ denied*, 11-2112 (La. 1/13/12), 77 So. 3d 970. Further, a judge is presumed to be impartial. The party seeking to recuse cannot merely allege lack of impartiality; he must present some factual basis. The alleged bias, prejudice, or personal interest must be of a substantial nature and based on more than conclusory allegations. *Covington v. McNeese State Univ.*, 10-0250 (La. 4/5/10), 32 So. 3d 223; *Riddle v. Premier Plaza of Monroe, L.L.C.*, 51,173 (La. App. 2 Cir. 2/15/17), 216 So. 3d 170; *In re Commitment of M.M.*, *supra*.

The applicable standard of review of recusal is abuse of discretion. *Hatfield v. Herring*, 54,048 (La. App. 2 Cir. 8/11/21), 326 So. 3d 944, *writ denied*, 21-01377 (La. 12/7/21), 328 So. 3d 424; *Menard v. Menard*, 19-580 (La. App. 3 Cir. 3/11/20), 297 So. 3d 82; *In re Commitment of M.M.*, *supra*. In order to recuse a judge from a case, the moving party must prove that, "objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Id.* (*citing Daurbigney v. Liberty Pers. Ins. Co.*, 18-929 (La. App. 3 Cir. 5/9/19), 272 So. 3d 69).

Whitehead made mere conclusory allegations that Judge Parks had a conflict of interest based on his identification of the working relationship between him and former Judge Wilson in which they simply shared office space, and the fact that Judge Parks' wife had been a member of a

professional organization with the opposing counsel. The concluded settlement for Judge Parks' wife's client involved no ongoing financial interest in Walmart, and the case was actually adverse to Walmart. Judge Parks is presumed to be impartial and the mere appearance of impropriety, if the allegations even arise to that level, are insufficient to warrant recusal. The trial court did not abuse its discretion by denying the motion to recuse because no probability of actual basis was shown.

### *Additional Discovery*

Whitehead makes a vague argument in his appeal that he should have been afforded an opportunity to gather evidence in support of his allegations. He argues that the court should have ordered that a certain FBI investigation be unsealed to support his claim that the presiding judge had a conflict of interest. No evidence was presented to show any pending FBI investigation or how it in any way related to an alleged conflict of interest; nonetheless, the trial court would have no authority to unseal a federal investigation.

Whitehead also claims that he was not allowed to obtain information on the individual on the motorized cart who caused the accident. First, Whitehead himself had successfully moved the trial court to defer discovery. He did not thereafter file any motion for discovery or a continuance to allow for discovery prior to the court's granting of summary judgment. He also did not identify any discovery that may have permitted him to avoid summary judgment. Nevertheless, the identification of the third-party shopper was irrelevant to Walmart's duty and/or breach.

14

*Cross Motion for Summary Judgment*

Whitehead seeks relief in his appeal based on the trial court's failure to expressly rule on his cross motion for summary judgment. This argument is without merit. The trial court's granting of Walmart's motion for summary judgment in conjunction with its silence on Whitehead's motion clearly denied the cross-motion.

## CONCLUSION

For the reasons stated hereinabove, AFFIRMED. All costs of the appeal are to be assessed to Whitehead.