JUDE G. GRAVOIS, Judge.
laAppellant, Dr. Lucien Miranne, appeals the trial court’s denial of his petition for nullity of judgment and the award of attorneys’ fees to appellee, Christopher Ezzell. For the following reasons, we affirm the judgment that dismissed Dr. Miranne’s petition for nullity and awarded attorneys’ fees to Mr. Ezzell. Mr. Ezzell answered the appeal, seeking' additional attorneys’ fees for defending the appeal, which we grant.

FACTS AND PROCEDURAL HISTORY

The petition for nullity arose out of a jury verdict rendered against Dr. Miranne in favor of Mr. Ezzell, who sued Dr. Mir-anne for personal injuries after Dr. Mir-anne punched him in the head in a bar in 2008. Following trial in 2010, a jury found Dr. Miranne liable to Mr. Ezzell' for his injuries and awarded him $435,513.69 in damages, representing $130,513.69 in past medical expenses, $25,000.00 for past pain and suffering, two years of past lost-wages in the amount |3of $140,000.00, and two years of future lost earning capacity in the amount of $140,000.00. Dr. Miranne appealed, arguing, as he had previously to the jury, that- Mr. Ezzell was a fraud and malingerer who was faking or exaggerating his injuries. This Court affirmed 'the judgment against Dr. Miranne and amended the judgment to include an additur of $75,000.00, representing two years of future pain and suffering. Ezzell v. Miranne, 11-228 (La.App. 5 Cir. 12/28/11), 84 So.3d 641. Dr. Miranne did not further appeal.
After the appeal, Mr. Ezzell filed a motion to tax certain litigation costs disputed by Dr. Miranne. On June 12, 2012, the trial court awarded Mr. Ezzell an additional $31,560.49 in costs. Dr. Miranne, however, refused to pay these costs, prompting Mr. Ezzell. to begin judgment debtor proceedings. Shortly thereafter,. Dr. Mir-anne’s counsel learned that Mr. Ezzell was employed as a, mule-drawn. buggy tour guide in the jSTew Orleans French Quarter. He hired a private investigator to take a buggy tour and videotape Mr. Ezzell giving the tour.
On July 20, 2012, Dr, Miranne filed a petition for nullity of judgment, alleging that the jury verdict was procured by fraud and/or ill practices, arguing that Mr. Ezzell, previously employed as a marine insurance claims adjustor, had fraudulently claimed at trial that he was incapable of returning to any employment. Dr. Mir-anne supported his petition with the private investigator’s video shot on July 4, 2012 showing Mr. Ezzell conducting a mule-drawn buggy tour. Thus, Dr. Mir-anne claimed, the video showed that Mr. Ezzell lied at trial about his ability to return to employment, that he presented perjured testimony to that effect, and that he failed to disclose “new”, .evidence during the appeal process that he was employed. Dr. Miranne requested that the judgment based on the jury verdict be annulled.
1 .[Following a i trial’ on the petition for nullity, the trial court dismissed Dr. Mir-anne’s petition, finding that the video evidence presented therein failed to establish *174 that Mr. Ezzell had perjured himself at trial or faked his injuries to his treating physicians. The trial court found no grounds for nullifying the jury verdict, and further opined that enforcing the jury verdict would not be unconscionable given that Mr, Ezzell’s employment as a part-time buggy driver was “sporadic,” the annual income therefrom was “negligible,” and that “such could hardly be considered gainful employment.” This appeal followed.
On appeal, Dr. Miranne argues that the trial court erred in dismissing his petition for nullity for lack of evidence. He argues that the video he entered into evidence at the nullity trial was more than sufficient to show that Mr. Ezzell’s claims that he could no longer work were fraudulent. He further argues that the deposition of Dr. John W. Thompson, Jr., entered into evidence at the trial of the nullity petition, supports his claim that he was deprived of significant evidence by Mr. Ezzell’s failure to disclose during the appeal process that he could return to work. Dr. Thompson, he argues, had testified at the principal trial that it was his opinion that Mr. Ezzell could no longer work; however, at his 2015 deposition for the nullity trial, Dr. Thompson “clarified” his opinion and said that he had really meant that he believed Mr. Ezzell could not return to work in his previous capacity as a marine insurance adjustor. This “clarified” opinion evidence from Dr. Thompson was not presented at the principal trial, Dr. Miranne argues, because this opinion evidence was not “discovered” until after the video evidence was obtained and not until the resultant 2015 deposition of Dr. Thompson was taken. ■
Dr. Miranne also argues in brief that “the depositions of Drs. [Alvin] Rouchell and [Susan] Andrews, both of which were also conducted in conjunction with the [pjetition for [n]ullity, reveal that, upon their review of the video, Mr. REzzell was largely recovered from many of the complaints and-conditions .he presented at the principal trial, including, stuttering, -word finding, and his ability :to recall certain information. This is all new evidence and information which was not available until the video evidence was discovered and obtained after the principal trial.”
In response to the* appeal, Mr. Ezzell argues that Dr. Miranne has failed to establish that the judgment dismissing the nullity action was unreasonable, or that the judgment was obtained- by- fraud or ill practices, or that upholding the jury’s verdict would be inequitable or unconscionable.

ANALYSIS

In Belle Pass Terminal, Inc. v. Jolin, 01-0149 (La.10/16/01), 800 So.2d 762, 766, the Supreme Court set forth the law concerning actions for relative nullity under La. C.C.P. art. 2004, to-wit:
According to La. Code Civ. P. art. 2004, any final judgment obtained by fraud or ill practices may be annulled. However, the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all -situations wherein a judgment is rendered through some improper practice or procedure. Kem Search v. Sheffield, 434 So.2d 1067 (La.1983). It. is imperative that courts review a petition for nullity closely as an action for nullity based on fraud or ill practices is not intended as a substitute for an appeal or;, as. a second chance to prove a claim that was previously denied for failure of proof. The purpose of an action for nullity is to prevent injustice which cannot be corrected through new trials and appeals. Gladstone v. American Auto. Ass’n, Inc., 419 So.2d 1219, 1222 (La.1982), citing Project of Louisiana *175 Code of Practice of 1825 at 97 (Official Reprint, 1938).
⅜ ⅜ ⅜
In reviewing a decision of the trial court on a petition for nullity, the issue for the reviewing court is not whether the trial court was right or wrong but whether the trial court’s conclusions were reasonable. Kem Search at 1071.
⅜ ⅝ ⅜
Louisiana jurisprudence sets forth two criteria to determine whether a judgment has been rendered through fraud or ill practices, |fiand is thus sub1 ject to nullification: (1) whéther circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief; and (2) whether enforcement of the judgment would be unconscionable or inequitable. Johnson v. Jones-Journet, 320 So.2d 533 (La.1975), Smith v. Cajun Insulation, Inc. 392 So.2d 398 (La.1980), and Ward v. Pennington, 523 So.2d 1286 (La.1988).
The deprivation of a legal right has been defined, in this context, as the right to appear and assert a defense and. the right to a fair and impartial trial,. Id. at 766-767. A party seeking nullity of a judgment under Article 2004 must demonstrate how he was deprived of the opportunity to present the defense because of some act of fraud or ill practice on the part of the opposing party. Hymel v. Discover Bank, 09-286 (La.App. 5 Cir. 12/08/09), 30 So.3d 51, 54.
Trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud or ill practices, to which discretion reviewing courts will defer. Hymel v. Discover Bank, 30 So.3d at 54, citing Power Marketing Direct, Inc. v. Foster, 05-2023 (La.9/6/06), 938 So.2d 662.

DISMISSAL OF PETITION FOR NULLITY

The crux of Dr. Miranne’s nullity claim appears to be that at trial, Mr. Ez-zell • claimed that he was not capable of returning to any employment, and that his treating doctors at trial, Drs. Rouchell and Andrews, testified to that effect; yet upon being confronted with the 2012 video, the doctors “clarified” their earlier opinions to reflect that they had believed that Mr. Ezzell could not return to work in his previous1 capacity as a marine insurance adjustor, but that his injuries did not preclude some- future employment. Dr. Mir-anne claims that if the jury had heard these “clarified” opinions, that Mr. Ezzell did have the capacity for some future employment, the result of trial would have been different.
At the trial on the petition for nullity, Dr. Miranne introduced the 2012 surveil-ianee video and the _ depositions of Drs. Andrews, Thompson, and Rouchell, |7doctors who had provided expert testimony at the principal trial regarding Mr. Ezzell’s injuries and his current condition. Mr. Ezzell’s deposition was. also entered in lieu of live .testimony.
, Mr..Ezzell testified at the principal trial in 2010 that he wanted to return to work and hoped that he could eventually do so; however, he did not feel that he could do so at that time. At his 2015 deposition, Mr. Ezzell testified that he could not find employment in his former field, despite attempts to do so. He said that a friend told him about an opening as a buggy tour driver, so he applied. His first job was taking care of the mules at the stables. He got a license to be a tour driver later in 2010 or 2011 and has worked sporadically as a-relief driver, making approximately *176 $2,100.00 per year. He said that he is limited to performing certain. tours because he could not work easily with a lot of noise or large' crowds, or at night. He stated that if he had a choice, he would rather be working in insurance as he used to do.
Dr. Rouchell testified at the principal trial as Mr. Ezzell’s treating psychiatrist who had treated him since 2003 for bipolar disorder. He continued .to treat' Mr. Ez-zell at the time he gave a deposition in the nullity case in 2015. At the principal trial, Dr. Rouchell never testified that Mr. Ez-zell could not return to work. His testimony was primarily focused on Mr.. Ezzell’s medical history, his current brain injury, the management- of his symptoms, and his prognosis' from a functional standpoint. At his 2015 deposition, Dr. Rouchell stated that Mr. Ezzell also suffered from some dementia and had at the time of the 2010 trial. He related the dementia to Mr. Ezzell’s injury in 2008. Notably, Dr. Rouchell testified that in September of 2012, which was post-trial and after the video in question, Mr. Ezzell underwent neuropsychological testing that revealed remaining cognitive deficits, severe impairment in attention, and memory problems. Mr. Ezzell had asked for Rthe testing because he felt that his memory problems were worsening. Dr: Rouchell felt that the results were similar to the test results obtained by Dr. Andrews in 2008. He believed that Mr. Ezzell’s cognitive deficits in 2015 were about the same as they were at the time of the trial in 2010.
Dr. Rouchell agreed that Mr. Ezzell did not stutter on the video, though he did show some slurring of words. Dr. Rouc-hell felt that on the day of the video, Mr. Ezzell was in a “hypomanic” state,[1] during which Mr. Ezzell showed a lot of energy and confidence. At those times, Dr. Rouc-hell explained, Mr. Ezzell would be high functioning and his speech fluent. Dr. Rouchell also said that Mr. Ezzell continues to have -depressive episodes where he again stutters, has trouble finding his words, and has memory problems.
Dr. Andrews, a board certified neurop-sychologist who evaluated Mr. Ezzell twice in,2008, gave a deposition in 2015 that was introduced at the nullity trial. At the principal trial, she testified that she had evaluated Mr, Ezzell in March of 2008 and again in November of 2008 after he had undergone extensive speech and cognitive therapy. She explained that her evaluation was a two-day intensive process lasting 6-8 hours .per day. She believed that during both evaluations, Mr. Ezzell gave his best effort. She noted that Mr. Ezzell had shown marked improvement over the course of speech therapy and other cognitive therapies, particularly in his memory evaluation scores, which was objective evidence that he was not malingbring, she told the jury.' The doctor also opined that future functional improvement was possible, though most of the improvement had Uprobably occurred by the time .of trial. At no time during the first trial did Dr. Andrews testify that Mr. Ezzell was incapable of returning to any employment.
In her 2015 deposition, Dr. Andrews stated that she had reviewed the video evidence, which lasted approximately 40 *177 minutes. She described the video as being of poor quality. She said that she could not formally or properly-assess Mr. Ez-zell’s condition and abilities from the video, because such assessment is properly done in the office. She was unable to assess whether Mr. Ezzell still had memory problems, attention problems, or issues processing information. She felt that most people who have -lived in the New Orleans area a long time, such as Mr. Ezzell, could probably recite the' same basic historical information that Mr. Ezzell gave during the tour. She did note that in places he slurred his words, which made it difficult to understand him. She also saw that he had trouble multitasking; she noted that whenever he stopped to do something with the mule, he appeared to have a hard time continuing with the conversation in progress.
Dr. Andrews said that she did not find Mr. Ezzell’s level of functioning on the video to be very high, and further noted that the video only showed a “tiny slice” of his life. She acknowledged that Mr,, Ezzell did not stutter on the video. She said that what she saw of his level of functioning in the video was .consistent with the opinion she gave at the trial in- 2010. She stated that based on her assessments in 2008 and her trial testimony in 2010, she would have expected to see Mr. Ezzell make some further functional improvements, as people often do when they must get on with the business of their daily lives' despite their cognitive problems. She firmly stated that nothing in the video caused her to question Mr. Ezzell’s veracity or truthfulness at the times she saw him in 2008, or change her opinion given at the principal trial regarding his future functional capacity.
|inDr. Thompson gave a deposition in 2015, for the nullity trial. He had previously evaluated Mr. Ezzell in 2008 and 2009 to determine his psychiatric diagnoses, the causes thereof, his prognosis, and his ability to return to work. In so doing, he reviewed all of Mr. Ezzell’s medical records, including Dr. Andrews’ report and the reports of Mr. Ezzell’s treating physician, Dr. Rouchell, and met with Mr. Ezzell twice, once to generate the repórt and once as a follow-up.
At the principal trial, Dr. Thompson testified that he definitely saw evidence that Mr. Ezzell had suffered a brain injury. He noted that Mr. Ezzell told him that he wanted to return to work, and he was firm in his belief that Mr. Ezzell was not malingering. He testified at the prihcipal trial that “I think [Mr. Ezzell’s] going to have a hard time returning to work.” When asked immediately thereafter for an explanation of this statement, Dr. Thompson testified as follows:
“Because of a combination of factors. Number one I think the emotional factor. Although he appears to be relatively stable on his bipolar medications, that plus the cognitive deficits that he’s continued — that he’s left with at this point, according to Dr. Andrews, I think it will make it difficult for him to return to the level of employment that he had before.” (Emphasis added.)
At the principal trial Dr. Thompson further agreed with Dr. Andrews, that Mr. Ezzell’s cognitive deficits could be permanent, though at the principal trial, he did not state that they were permanent or that functional improvement could not occur.
•In his 2015 deposition, Dr. Thompson stated that he had reviewed his principal trial testimony and that he had said that he believed Mr. Ezzell could not work, but clarified • at the deposition that he- had meant Mr. Ezzell could not return to work in his former capacity. He believed he could do some work that did not require great cognitive or emotional capacity. He reviewed the' surveillance video and be *178 lieved that Mr. Ezzell was functioning at a “higher level, maybe” than when Dr. Thompson had last evaluated him in 2009, though he stated that on the day of | uthe evaluation, Mr. Ezzell was. depressed, which can affect cognitive abilities. Dr. Thompson felt that on the day of the video, from what he observed, Mr. Ezzell was probably a bit hypomanic, which would increase his functioning as opposed to if he were having a depressive episode.. Dr. Thompson noted that the video was but a short piece of Mr. EzzelFs life two years after the pressure of the trial was done, but that he saw improvement in Mr. Ez-zell’s condition. He noted that seeing Mr. Ezzell perform the buggy job did not change his opinion that Mr. Ezzell could not have returned to being a marine insurance adjustor. He concluded by saying that nothing he saw in the video would have changed the opinion he gave at trial, nor did he think that Mr. Ezzell engaged in fraud in the lawsuit.
Upon our thorough review of the evidence presented at the nullity trial, combined with our review of the record from the principal trial,[2] we find that the trial court’s conclusion in dismissing Dr. Miranne’s petition for nullity was reasonable. Dr. Miranne failed to show that he was deprived of a legal right or a defense at the principal trial. Belle Pass Terminal, Inc. v. Jolin, supra. Dr. Miranne’s defense theory, that Mr. Ezzell was making up his symptoms and malingering, was fully litigated at the principal trial. Mr. Ezzell’s functional capability allowing him to have “sporadic and negligible” part-time employment by 2012 as a buggy tour driver is not inconsistent with the medical opinions presented at the principal trial. There is' no evidence that Mr. Ezzell was capable of even this sporadic employment as of the time of the - principal trial. The fact that he later made functional improvements consistent with the medical opinion testimony does not show that he lied about his condition at the principal trial. The fact that he was engaged as a part-time buggy driver two years after the principal trial is not evidence of fraud of which the jury was deprived.
|12We further agree with the trial court’s conclusion that enforcing the jury verdict would not be unconscionable or inequitable. Id. The jury did not award Mr. Ezzell damages for permanent future lost earning capacity. As noted above, the jury at the principal trial awarded Mr. Ezzell two years of past lost wages in the amount of $140,000.00 and two years of future lost earning capacity in the amount of $140,000.00, ostensibly based on evidence that Mr. Ezzell had earned approximately $70,000.00 per year as a marine insurance adjustor.[3] Clearly, after hearing all of the evidence, including Dr. Miranne’s vigorous defense, the jury believed that Mr. Ezzell was eapáble of some future employment and their award of only two years of future lost earning capacity reflects this.
Accordingly, we affirm the trial court’s judgment dismissing the petition for nullity- . .

AWARD OF ATTORNEYS’ FEES

Dr. Miranne appeáls the award of $36,211.17 hi attorneys’ fees and costs under La. C.C.P. art.2004’ as excessive. He argues that the trial court failed to consider any of the factors found in Rivet v. DOT *179 & Dev., 96-0145 (La.09/05/96), 680 So.2d 1154, 1155, and thus the award must be reversed.
La. C.C.P. art. 2004 allows the court to award reasonable attorneys’ fees to the party who prevails in a nullity action. Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and 113skill of counsel; and (10) the court’s own knowledge. Rivet v. DOT & Dev., 680 So.2d 1154, 1155.
On the day of the nullity trial, Mr. Ez-zell submitted a trial memorandum concerning his entitlement to attorney’s fees, requesting that he be awarded $41,416.67 in attorneys’ fees and costs incurred in defense of the nullity action. Mr. Ezzell subsequently filed a supplemental trial memorandum containing an affidavit and a detailed itemized statement for professional services rendered and expenses incurred by Mr. Ezzell in defense of the nullity action, requesting that he be awarded $44,588.67 in attorneys’ fees and costs incurred in defense of the. nullity action, which amount included attorneys’ fees and costs incurred in preparing the post-trial memoranda requested by the trial court pt the conclusion of the nullity trial.
In its March 27, 2015 judgment, the trial court awarded Mr. Ezzell $36,211.17 in “court costs and attorney fees,” as the prevailing party on the petition for nullity. In its reasons for judgment dated April 15, 2015, the trial court noted that La. C.C.P. art. 2004 “states that the Court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on the grounds of fraud or ill practices,” and after “[h]aving reviewed [Mr. Ezzell’s] counsel’s time sheets and invoices this Court awarded costs and fees in an amount that it considers reasonable: $86,211.17.”
Upon review, we find that the trial court did not abuse1 its discretion in awarding Mr. Ezzéll $36,211.17 in attorneys’ fees and costs pursuant to La. C.C.P. art. 2004. Mr. Ezzell’s trial-memorandum cites the Rivet factors- and contains a well-briefed, thorough discussion of these factors and their application to this case. Mr. Ezzell’s supplemental memorandum contains an affidavit and a detailed itemized statement for professional services rendered and expenses incurred by Mr. 114E-zzell in defense of the - nullity action. Further, the trial court obviously had complete and thorough knowledge of this litigation, which has spanned many years and has required Mr. Ezzell to spend much legal effort t.o collect the judgment rendered in his favor and to defend the nullity action. Although in his supplemental memorandum Mr. Ezzell requested $44,588.67 in attorneys’ fees and expenses for defending the.nullity action, the trial court only awarded him $36,211.17 in attorneys’ fees and costs (over $8,000.00 less than requested), describing the same as “reasonable.” Further, in its reasons for judgment, the trial court stated that it had reviewed Mr. Ezzell’s counsel’s time sheets and invoices in making its award which it considered “reasonable.” It is thus obvious that the trial court considered the parties’ arguments and the Rivet factors in making its decision on this .issue. Under the particular facts and circumstances of this-case, we find no abuse of the trial court’s-discretion in its award of $36,211.17 in attorneys’ fees and costs to Mr. Ezzell pursuant to La. C.C.P. art. 2004, and thus affirm the award.[4]

*180
ATTORNEYS’FEES FOB DEFENDING THE APPEAL

Mr.'' Ezzell. answered the1 appeal, arguing that he is entitled to additional attorneys’ fees for defending the appeal in two respects: first, as the prevailing party under La. C.C.P. art. 2004, he may collect attorneys’ fees for the appeal; and second, he is entitled to attorneys’ fees for a frivolous appeal under La. C.C.P. art. -2164. Upon review, we find that Mr. Ezzell has presented a compelling argument for an award of reasonable attorneys’ fees for ^successfully defending the appeal. “Generally, when an award for attorney’s fees is granted at the trial level, additional attorney’s fees are proper for work done on appeal.” Siemens Water Techs. Corp. v. Revo Water Sys., LLC, 13-361 (La.App. 3 Cir. 1/8/14), 130 So.3d 473. See also Richert v. Schindler Elevator Corp., 11-1099 (La.App. 5 Cir. 6/28/12), 97 So.3d 487, 494 (An increase in attorney’s fees is awarded on appeal when 'the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff’s attorney, provided that the plaintiff requests such an increase.). Accordingly, we award Mr. Ezzell $5,000.00 in attorneys’ fees for successfully defending the appeal.

CONCLUSION

For the foregoing reasons', wé affirm the trial court’s judgment in favor of Mr. Ez-zell and against Dr. Miranne in all respects. Further, we award Mr.' Ezzell $5,000.00 in attorneys’ fees for successfully defending the appeal. . All costs of the appeal are assessed to Dr. Miranne.

AFFIRMED: REQUEST FOR ATTORNEYS’ FEES GRANTED

. Dr. 'Rouchell described “hypomania'' as when "a patient is in a state where they’re overly confident. They have lots of energy.” He stated that in the video, Mr. Ezzell "se'emed awfully confident.” He said he thought that Mr, Ezzell "was hypbmanic, feeling his oats, feeling really good , about himself.” Dr. Rouchell also pointed out that Mr. Ezzell was bipolar, and that most of the time when he saw him, he was “terribly depressed. But on that DVD, he looked above the line.” He also stated that patients such as Mr. Ezzell "will have good days and bad days,”

. The record of the first trial .is an exhibit to this appeal.

. The trial evidence also showed that Mr, Ezzell supplemented this income by coaching soccer, which added $12,000.00 to $14,000.00 per year to his pre-injury income. After his injury, he was no longer able to coach.

. In his answer to the appeal, Mr. Ezzell . sought an additur to the trial court’s award .of attorneys’ fees ‘‘to encompass a more appropriate quantum of attorneys’ fees” for defending the nullity action. Having found no abuse of the trial court’s discretion in its award of $36,211.17 in attorneys’ fees and costs to Mr, Ezzell pursuant to La. C.C.P. art. 2004, we decline Mr. Ezzell’s request for an additur to the trial court’s award of attorneys’ fees for defending the nullity action at the trial court level.