LOLLEY, J.
|! Mary Ann Riddle appeals a judgment by the Monroe City Court for the City of Monroe, Louisiana, dismissing her claims with prejudice. Riddle sought to annul a previous judgment by the same court in favor of the Monroe Symphony Orchestra and Premier Plaza of Monroe, LLC. For the following reasons, we reverse the trial court’s judgment and annul the initial judgment as prayed for by Riddle. Additionally, the matter is remanded for consideration of her claim for attorney fees pursuant to La. C.C.P. art. 2004.
Facts
Immediately at issue in this appeal is a judgment against Riddle pertaining to her petition to annul a previous judgment by the trial court. Thus, the facts related to *172 that initial judgment are relevant to this appeal.
Originally, Riddle, self-described as “active in civic affairs, event planning and fund raising” was solicited to direct the major fundraising event of the Monroe Symphony Orchestra (“MSO”)-“Art With a View.” Although a written contract was prepared in April 2013 setting forth the precise terms of the agreement between Riddle and the MSO, it appears the contract was never executed by either party. Nonetheless, the record indicates that the parties proceeded accordingly, and the event was held. Riddle claims it was the most successful fundraiser in the MSO’s history. However, despite her success, Riddle maintains that the MSO failed to pay her, as mutually agreed, the final monthly stipend and car allowance or the 5% bonus of the net proceeds. Riddle filed suit against the MSO and Premier Plaza, LLC, claiming breach of contract. Initially, Riddle appeared at the trial court pro se.
hThe matter proceeded to trial presided over by Monroe City Court Judge Aisha Clark. Notably, several former or current MSO board members testified at that trial. Following the trial, judgment was rendered against Riddle and in favor of the MSO and Premier Plaza. A final judgment was signed on July 1, 2015, dismissing Riddle’s claims with prejudice (the “initial judgment”); however, soon after the initial judgment was signed, Riddle became aware that Judge Clark had served on the 2009-10 MSO board.[1] Riddle claims that particular board had conceived of the fund-raising event.
On July 16, 2015, Riddle filed a petition to annul the trial court’s initial judgment under La. C.C.P. art. 2004. She claimed the trial court’s judgment had been obtained by an ill practice, because a mandatory ground of recusal existed under La. C.C.P. art. 151, which was undisclosed to her. Riddle urged that due process was denied as a result, and the breach of contract judgment should be annulled. She also prayed for the payment of all court costs and reasonable attorney fees as provided in La. C.C.P. art. 2004(C).
A hearing was fixed by the trial court. Riddle filed a motion to recuse Judge Clark, who then signed an order of self-recusal, noting “she must recuse herself from the hearing of this matter. In light of this conflict in this matter, the parties feel as though the court may not [be] able to preside fairly and impartially based on ... having been a member of the Monroe Symphony Orchestra Board[.]” Riddle also filed a timely petition for devolutive appeal of the initial judgment, but that order was never signed by |sthe trial court. The other Monroe City Court judges recused themselves from this matter, and an ad hoc judge was appointed to proceed.
Ultimately, the petition to annul judgment was tried, and judgment was entered against Riddle dismissing her claims with prejudice. It is this judgment that is on appeal by Riddle.
Discussion
On appeal, Riddle brings only one assignment of error, arguing that the trial court erred as a matter of law and abused its discretion when it failed to properly apply La. C.C.P. art. 2004 and dismissed with prejudice her petition to annul the initial judgment. Riddle specifically urges that ill practices under art. 2004 occur when the trial judge and the MSO failed to disclose that the judge served on the MSO board and personally knew board mem *173 bers who testified at the trial on behalf of the MSO. According to Riddle, Judge Clark, as a prior board member of the MSO, was “biased, prejudiced, or interested” in this breach of contract case against the MSO, and she had a mandatory duty to recuse herself. Riddle further submits that failure—by both Judge Clark and the MSO—to bring the trial judge’s relationship to the parties’ attention was an ill practice sufficient to warrant annulling the breach of contract judgment. Under the unique circumstances presented where the judge eventually self-recused after the trial, we agree.
Louisiana C.C.P. art. 2004 provides that “[a] final judgment obtained by fraud or ill practices may be annulled.” Article 2004 is not limited to cases of actual fraud or intentional wrongdoing, but encompasses situations in which a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right. Yellowbird Investments, L.L.C. v. Barber, 46,977 (La. App. 2d Cir. 3/14/12), 87 So.3d 970, 974, writ not cons., 2012-0866 (La. 06/01/12), 90 So.3d 422, citing Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La. 1983). When reviewing a trial court decision on a petition to nullify pursuant to La. C.C.P. art. 2004, the “issue for the reviewing court is not whether the trial court was right or wrong but whether the trial court’s conclusions were reasonable.” Belle Pass Terminal, Inc. v. Jolin, Inc., 2001-0149 (La. 10/16/01), 800 So.2d 762, 767.
A party seeking to annul a judgment under La. C.C.P. art. 2004 must show both that the challenged judgment resulted from a deprivation of a legal right and that its enforcement would be unconscionable and inequitable. Midland Funding, LLC. v. Cady, 47,854 (La.App. 2d Cir. 2/27/13), 110 So.3d 656, 659, citing Wright v. Louisiana Power & Light, 2006-1181 (La. 03/09/07), 951 So.2d 1058 and Straughter v. Hodnett, 42,827 (La.App. 2d Cir. 01/9/08), 975 So.2d 81, writ denied, 2008-0573 (La. 05/02/08), 979 So.2d 1286.
Specifically, La. C.C.P. art. 2004 states:
A. A final judgment obtained by fraud or ill practices may be annulled.
B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
C. The court may award reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on these grounds.
Louisiana C.C.P. art, 151 provides the grounds upon which a judge shall be recused from a matter. Specifically, La. C.C.P. 151 provides, in pertinent part:
A. A judge of any court, trial or appellate, shall be recused when he ...
|fi(4) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties’ attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings.
The grounds for recusal enumerated in art. 151 are exclusive and do not include a “substantial appearance of the possibility of bias” or even a “mere appearance of impropriety” as causes for removing a judge from presiding over a given action. Slaughter v. Bd. of Sup’rs of S. Univ. & Agr. & Mech. Coll., 2010-1114 (La.App. 1 Cir. 08/02/11), 76 So.3d 465, 471, writ denied, 2011-2112 (La. 01/13/12), 77 So.3d 970. Moreover, a judge is presumed to be impartial. The party seeking to recuse cannot merely allege lack of impartiality; he must present some factual basis. Further, the bias, prejudice, or personal interest *174 alleged must be of a substantial nature and based on more than conclusory allegations. Covington v. McNeese State Univ., 2010-0250 (La. 04/05/10), 32 So.3d 223,225.
Here, the question is whether the initial judgment should be annulled for ill practices, those being that Judge Clark, who had a previous connection with the defendants, did not timely recuse herself from the matter. In rejecting Riddle’s claims in her petition to annul, the trial court reasoned that Riddle knew or should have known that Judge Clark was an MSO board member, and Riddle was not deprived of her right to seek the recusal of Judge Clark prior to trial. However, we do not believe, considering these facts, that Riddle was in the best position to recognize a potential conflict that would merit recusal of Judge Clark. Instead, when initially assigned the case at the trial court, Judge Clark was in a much better position to recognize her involvement as a board member with the MSO [fithan Riddle, who testified that she never knew Judge Clark despite serving on the board at the same time.
Further, recognizing that the jurisprudence places a heavy burden on Riddle for her claim to annul the initial judgment, we note that Judge Clark’s “personal interest” in the MSO was clearly of a substantial nature. Serving as a board member for any organization requires engaged activity, indicating an interest of a substantial nature, not a casual fancy. Riddle did not allege that Judge Clark simply attended the fundraiser event or was a mere lover of the arts. It was a stipulated fact that Judge Clark served on the MSO board. Further, the evidence showed that Judge Clark, as a member of the board, actively participated in the governing of the body. In fact, the December 1, 2009 minutes indicate that Judge Clark, acting as an attorney at the time, actually negotiated a rental contract between the City of Monroe and the MSO, which contract she reportedly was to present before the board. In taking that action as a board member/lawyer, she undeniably strived to obtain the best terms she could for the MSO, undoubtedly having a personal interest of a substantial nature that the MSO’s best interest was served.
Riddle concedes that she did sit on the MSO’s board at the same time as Judge Clark, which is evidenced by board meeting minutes showing simultaneous attendance by Riddle and Judge Clark in 2009. However, Riddle points out that there were 44 members of the board, and she did not know Judge Clark, or that Judge Clark was a practicing attorney at the time. As stated, in this instance, Judge Clark was in a better position to recognize “the conflict,” especially considering the witnesses called in the initial trial. Notably, the minutes introduced at trial indicate that Marilyn Koepke was board president at the time when Judge Clark was negotiating the MSO |7rental contract with the city, and Ms. Koepke testified at the breach of contract trial. So considering, it was unreasonable for the trial court to place that burden on Riddle.
Notably, a finding of ill practices does not necessitate a determination of intent, and in no way do we conclude that Judge Clark intentionally failed to recuse herself from this matter. But considering the particular facts of this matter, Riddle did allege sufficient facts to show that Judge Clark indeed had a personal interest in the MSO, as evidenced by her previous involvement with the organization, and that interest was of a substantial nature. We further observe Judge Clark ultimately decided to self-recuse herself from hearing the petition to annul, in which order she referred to “this conflict in this matter.” Thus, Judge Clark’s failure to recuse her *175 self earlier resulted in an unintentional ill practice, and so considering, the trial court abused its discretion in failing to annul the initial judgment in favor of the MSO and Premier Plaza of Monroe, LLC.

Attorney Fees

As stated, La. C.C.P. art. 2004(C) provides that reasonable attorney fees incurred by the prevailing party in an action to annul a judgment on grounds of fraud or ill practice may be awarded. However, regardless of the statutory authorization for an award of attorney fees, courts should examine certain factors to determine the reasonableness of the fees. Rivet v. State, Dep’t. of Transp. & Dev., 96-0145 (La. 09/05/96), 680 So.2d 1154, 1161. Factors to be considered include the ultimate result obtained; the responsibility incurred; the importance of the litigation; the amount of money involved; the extent and character of the work performed; the legal knowledge, attainment, and skill of the attorneys; the number of appearances | ^involved; the intricacies of the facts involved; the diligence and skill of counsel; and the court’s own knowledge. Id.; see also, Ezzell v. Miranne, 2015-471 (La. App. 5th Cir. 01/27/16), 185 So.3d 171.
Here, although Riddle prayed for attorney fees pursuant to art. 2004, because she did not prevail at the trial court, there was no evidence of or any consideration pertaining to those fees. Accordingly, this matter is remanded for a determination regarding Riddle’s entitlement to an attorney fee award. Sicard v. Sicard, 2011-423 (La. App. 5th Cir. 12/28/11), 82 So.3d 565, 569.
Conclusion
For the foregoing reasons, the judgment of the Monroe City Court is reversed, and the initial judgment in favor of Premier Plaza of Monroe, LLC and the Monroe Symphony Orchestra, LLC is annulled. The matter is also remanded in order for the trial court to make a determination whether attorney fees are due Riddle pursuant to La. C.C.P. art. 2004. All costs of this proceeding are to be paid by the ap-pellees.
REVERSED AND REMANDED.

. The MSO stipulated that Judge Clark served on its board between 2009-11. At the time she served on the board, Judge Clark was not a judge, but she practiced law in Monroe. She was elected in 2012.