Judgment rendered September 23, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,577-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE:
THE JUDICIAL COMMITMENT OF M.M.
(BROSSETTE CONTEMPT PROCEEDING)

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 618253

Honorable Robert Paul Waddell, Judge

* * * * *

| | |
|---|---|
| STEPHANIE M. BORGHARDT | Counsel for Appellant, |
| EDWARD M. BROSSETTE | Edward M. Brossette (Contempt) |
| KRYSTAL AIRS BROWN | |
| NEIL RISLEY ELLIOTT, JR. | |

* * * * *

Before PITMAN, GARRETT, and STEPHENS, JJ.

PITMAN, J., concurs for the reasons assigned by Garrett, J.

GARRETT, J., concurs with written reasons.

**STEPHENS, J.**

Edward M. Brossette appeals a judgment of the First Judicial District Court, for the Parish of Caddo, State of Louisiana. In that judgment, Brossette's motion requesting an impartial judge was denied. In the same judgment, Brossette was determined to be in constructive contempt of court and ordered to pay a fine of $100.00 and serve four (4) hours of confinement in the Caddo Correction Center. For the following reasons, we reverse the trial court's judgment and remand for additional proceedings.

## FACTS

This appeal stems from a judicial commitment proceeding concerning M.M., a woman who was 57 years old at the time of her commitment. Although this appeal does not pertain to her judicial commitment, it is necessary to address the details of that proceeding as they directly relate to the issues on appeal.

M.M. suffers from a dual diagnosis—schizoaffective disorder (a mental disorder) combined with a mild intellectual disability (a developmental disability). This dual diagnosis created a procedural problem for the Louisiana Department of Health (the "LDH"), Brossette, and the trial court, specifically Judge Robert Waddell. The relevant and ongoing issue in the proceedings was the applicable statutory law for her commitment.[1] For her developmental disability, M.M. was receiving support from the Office for Citizens with Developmental Disabilities ("OCDD"), which operates under the umbrella of LDH. However, M.M.'s

---

[1] Judicial commitment proceedings for individuals with mental illness and substance-related or addictive disorders are provided for in La. R.S. 23:54; whereas, La. R.S. 28:454.6 relates to judicial commitment proceedings for individuals with developmental disabilities.

mental illness ultimately deteriorated to a point where she was considered to be dangerous to herself and others, and the OCDD allegedly could no longer address or meet M.M.'s needs. Thus, on July 22, 2019, M.M. was admitted to Lafayette General Hospital for inpatient psychiatric treatment.

LDH determined that M.M. needed long-term inpatient psychiatric treatment to stabilize her, and the only available program LDH could locate was at Brentwood Hospital ("Brentwood") in Shreveport. M.M. was admitted to Brentwood on July 25, 2019, prior to the filing of the petition. On July 31, 2019, the petition for commitment was filed pursuant to La. R.S. 28:54, *et seq.* by the LDH, Office of Behavioral Health, represented by Brossette.

An order was entered by the trial court setting a commitment hearing for August 7, 2019. Dr. Olufemi Ogundeji was ordered to exam M.M. and prepare a report to determine if she met the criteria for legal commitment. In that same order, M.M. was appointed an attorney by the Mental Health Advocacy Service ("MHAS"), which ultimately assigned attorney Al Sale to represent her. On the day of the scheduled hearing, Sale filed a motion for dismissal claiming he was not given the requisite reasonable notice with a physician's report pursuant to La. R.S. 28:54(D)(1).[2] Sale also alleged a judicial commitment should have been filed under the state's developmental disability law to assure that M.M. received appropriate treatment and benefits under that area of the law, specifically La. R.S. 28:454.5, *et seq.*

At the August 7 hearing, Judge Waddell noted Brossette had not filed the physician's report. Sale pointed out that Brossette had failed to produce

_____

[2] The statute requires that a written physician's report be provided to the individual's attorney at least three days prior to a commitment hearing.

2

the requisite written report by Dr. Ogundeji as Judge Waddell had ordered. The record reflects that Brossette apparently failed to inform Dr. Ogundeji he was to prepare a report for the trial court. As a result, Sale also brought up the issue of having OCDD added to the proceedings. The commitment hearing was continued until August 14, and Brossette amended the petition, alleging that M.M.'s treating physician at Brentwood would prepare a report and have it to MHAS at least three days prior to the hearing.

The commitment hearing commenced on August 14, 2019, and the record reflects an "off the record discussion" was held as to the timeliness of the required physician's report. Brossette was admonished by Judge Waddell, and he informed Brossette, "[t]here's no excuse for that." However, the proceeding commenced. Dr. Ogundeji testified that M.M. had required acute, inpatient psychiatric hospitalization eleven times in the last eight months. He testified her behavior was "very unmanageable at this time." Dr. Ogundeji concluded that M.M. was dangerous to herself and others and met the criteria for a mental health commitment. M.M. did not refute the LDH's evidence and did not request an independent medical opinion. Based on M.M.'s demeanor (she had an outburst requiring her removal from the hearing) and Dr. Ogundeji's report and testimony, Judge Waddell concluded,

> [t]here's no question that the lady is a danger to herself or others and gravely disabled . . . . I'm going to commit her to LDH, but I'm going to order that this case be continued two weeks for placement. The real issue here is placement and what services she can get.

Significantly, no judgment was signed at that time committing M.M., and the matter was continued to August 28, 2019, purportedly in order to determine M.M.'s placement.

Prior to the scheduled August 28 placement hearing, the record reflects an opening became available at Northlake Behavioral Health System ("Northlake") in St. Tammany Parish. Brossette asserts he notified the trial court and Sale by e-mail on August 27 of the opening at Northlake; however, Sale informed Brossette he opposed the move. Brossette claims no opposition to the relocation was made by the trial court, and on the same day, despite the objection by Sale, LDH transported M.M. from Brentwood to Northlake.

At the August 28 placement hearing, Judge Waddell informed Brossette he had not intended for M.M. to be placed until the placement hearing had occurred. He also informed Brossette that M.M. had not been judicially committed to the custody of LDH and refused to sign the prepared commitment judgment. Sale explained he also refused to sign the judgment because the LDH amended petition only cited mental health law and made no mention of the applicable developmental disability law. Further, Sale did not agree to waive M.M.'s appearance at the subsequent hearing; thus, the trial court ordered M.M. be returned to Caddo Parish for the next hearing. Judge Waddell additionally ordered that M.M. be returned for further evaluation and determination as to proper services on her behalf.

On September 5, 2019, Brossette filed a motion and order for dismissal of the amended petition—notably, the trial court still had not issued a judgment on the commitment proceedings at this time. Brossette asserted in the motion that he was under the impression M.M. had been committed to the custody of LDH, and he referenced the trial court minutes from the initial proceeding. Further, he asserted that based on this

assumption, LDH placed M.M. at Northlake on September 27. Therefore, after receiving a Physician's Emergency Certificate ("PEC"), he sought dismissal of the petition, which would allow Northlake authority to retain M.M. as a patient. Brossette claimed the PEC made LDH's amended petition moot. In response, Sale filed a reconventional demand asserting M.M. had been transferred to Northlake and not returned to Caddo Parish in violation of the trial court's order. Sale alleged M.M. was not receiving treatment for her developmental disability, and her rights as a mental health/developmental disability patient were violated by the PEC. He requested a determination regarding the appropriate placement for M.M. as per the developmental disability law.

The parties returned for a September 9, 2019 hearing, which commenced with the trial court's attention to Brossette's motion to dismiss the judicial commitment. Describing the case as being "fouled up from the first part," Judge Waddell denied Brossette's motion; however, he ultimately entered a judgment finding that M.M. suffered from "mental illness" causing her to be a danger to herself and others. M.M. was judicially committed to the custody of LDH for a period not to exceed 180 days. Further, LDH was ordered to ensure M.M.'s continued eligibility and access to services and the least restrictive placement for her developmental disability. Also, at that hearing, Judge Waddell stated on the record that he was considering citing Brossette and/or LDH with contempt of court. A hearing to determine that issue was set for September 11, 2019.

The September 11 hearing commenced with Judge Waddell noting:

Mr. Brossette is back in the courtroom today for contempt.

I've given this a lot of thought, Mr. Brossette, and I think you're in contempt of court, I think in direct contempt.

****

To me, what you did was even more blatant, because I think you just did not do what I said.

Then, Judge Waddell determined Brossette to be in contempt of court, fining him $500 and sentencing him to 24 hours in jail—all of which he suspended. At that point, Judge Waddell reviewed, in detail, the proceedings and his reasons for concluding Brossette was in contempt. Brossette refused to "accept" Judge Waddell's finding, objected, and requested a hearing on the matter in order to dispute the reasons for the contempt holding. The matter was continued to October 15, 2019.

On October 1, 2019, Judge Waddell filed his own motion against Brossette, a rule nisi for contempt of court. In that filing, Judge Waddell recounted the series of events in connection with M.M.'s judicial commitment, concluding with the claim that Brossette's actions constituted constructive contempt in that he: failed to timely file the physician's report; failed to include OCDD in the matter; transported M.M. to Northlake without authority by the trial court; and, failed to transport M.M. back to Caddo Parish after specifically ordered to do so.

In response to Judge Waddell's rule nisi, Brossette filed a motion requesting an impartial judge, citing *Kidd v. Caldwell,* 371 So. 2d 247 (La. 1979). He argued *Kidd* mandated claims of constructive contempt should be tried "before a judge other than the one toward whom the contumacious

6

behavior was directed." He also argued that consideration by another judge of the contempt claims "would be better for the appearance of justice."

A hearing was held on October 15, 2019, and Judge Waddell began by first considering Brossette's motion for impartial judge, which he denied. The judge reasoned that, unlike *Kidd*, he and Brossette were not contentious or combative. Judge Waddell stated he simply believed Brossette circumvented and/or ignored his orders. Then addressing the contempt charges, Judge Waddell went through a discussion of the claims made in his rule nisi, noting reasons he believed Brossette was in contempt. After explaining those reasons, Judge Waddell fined Brossette $100 and ordered him to serve four hours in jail at the Caddo Correctional Center, notably a more severe penalty than originally imposed on September 11.

Brossette sought relief through a writ application to this court, which was granted and remanded for perfection of appeal. This court also stayed execution of his sentence pending final disposition of this matter. *State in the Int. of M.M. (In Re Brossette Contempt Proceeding)*, 53,379-CW (La. App. 2d Cir. 10/18/19). This appeal ensued.

## DISCUSSION

In Brossette's first assignment of error, he maintains the trial court erred in denying his motion requesting an impartial judge (*i.e.*, recusal). Brossette recognizes that La. C.C.P. art. 154 states, "If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc[.]" He also recognizes the trial court cited him with "constructive contempt" as punishment for disobeying the trial courts' order(s). In support of his argument that the trial erred in denying his motion for an impartial judge, Brossette cites

7

*Kidd, supra*, arguing the case "traverses the general La. C.C.P. art. 154 requirement . . . of having to plead a valid ground for recusal in his Motion and mandates that the constructive contempt charges brought against . . . Brossette should have been heard by another judge." Whereas Brossette submits *Kidd* would mandate that constructive contempt charges compel consideration by an "impartial" judge, the language in *Kidd* does not warrant such a broad application as it was specifically limited to the facts presented in that case. *Id.*, at 256. Thus, we look to statutory law pertaining to the recusal of judges.

> Louisiana C.C.P. art 154 provides:
>
> A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.
>
> Louisiana C.C.P. art. 151 provides the grounds upon which a judge

shall be recused from a matter. Specifically, La. C.C.P. art. 151 provides, in pertinent part:

> A. A judge of any court, trial or appellate, shall be recused when he . . .
>
> (4) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings.

Notably, when *Kidd* was rendered in 1979, La. C.C.P. art. 151 was not in its current form. The article was not amended until 1987, when it was amended and reenacted to add the language, "[i]s biased, prejudiced, or

8

interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings." 1987 La. Sess. Law, No. 579, §1.

The grounds for recusal enumerated in art. 151 are exclusive and do not include a "substantial appearance of the possibility of bias" or even a "mere appearance of impropriety" as causes for removing a judge from presiding over a given action. *Slaughter v. Bd. of Sup'rs of S. Univ. & Agr. & Mech. Coll.*, 2010-1114 (La. App. 1 Cir. 08/02/11), 76 So. 3d 465, 471; *writ denied*, 2011-2112 (La. 01/13/12), 77 So. 3d 970. Moreover, a judge is presumed to be impartial. The party seeking to recuse cannot merely allege lack of impartiality; he must present some factual basis. Further, the bias, prejudice, or personal interest alleged must be of a substantial nature and based on more than conclusory allegations. *Covington v. McNeese State Univ.*, 2010-0250 (La. 04/05/10), 32 So. 3d 223; *Riddle v. Premier Plaza of Monroe, L.L.C.*, 51,173 (La. App. 2 Cir. 02/15/17), 216 So. 3d 170.

Here, Judge Waddell, when presented with Brossette's motion for an impartial judge, had three options under art. 154: (1) deny the written motion, deciding it lacked the requisite "ground for recusation"; (2) grant the motion, recusing himself from considering the contempt charges; or (3) "refer the motion to another judge" for consideration of the recusal issue. Initially, Brossette maintains Judge Waddell erred in considering the motion himself and denying it. We agree.

At the October 15 contempt hearing (and before addressing the contempt charges against Brossette), Judge Waddell considered the recusal issue, noting:

> I'm going to deny that. This is not where this was direct
> contempt where we had a fight. It's been cordial the whole
> way[.]
>
> But I'm not going to have somebody else come in and make
> this like a formal hearing like that. This is strictly a contempt
> rule. If we did it by that rule, I just think it would be—it durn
> sure wouldn't be cost-effective, but it would be burdensome to
> everybody.

After a brief recess, Judge Waddell revisited Brossette's motion, which he

denied and briefly explained:

> First, having the other judge appointed to hear the contempt
> rule, I'm going to deny that. I did look at your case of *Kidd*.
> Those were very contentious things, hard feelings between the
> judge. I mean, almost combative between the lawyer and the
> judge all during the thing and I can see some prejudice.
>
> This does not rise to this[.] I'm not mad at [Brossette] or
> anything else. I just think that he circumvented or just ignored
> what I had ordered to do, and for that reason we're going to
> have it.
>
> But I don't think I need to bring in a third judge or a second
> judge to come in and have a separate hearing. We can have it,
> and then I'll make the ruling on the contempt.

We recognize the trial court has discretion to determine if there is a

valid ground for recusal set forth in the motion. *State in Interest of N.B.*,

52,002 (La. App. 2 Cir. 03/16/18), 248 So. 3d 532, *writ denied*, 2018-0617

(La. 05/25/18), 243 So. 3d 568. However, considering the facts of this

matter, Judge Waddell abused his discretion in that a valid ground for

recusal was stated in Brossette's motion under La. C.C.P. art. 151(A)(4).

Because the motion set forth a valid ground (which has already been

described herein), Judge Waddell was mandated to either recuse himself

outright or refer Brossette's motion to another judge for consideration. La.

C.C.P. art. 154*; State in Interest of N.B., supra.* His summarily denying

Brossette's motion, in light of the reasons given, was in error.

10

Next, not only did Judge Waddell err in considering Brossette's motion himself, but he erred in failing to recuse himself from the contempt matter altogether. Here, grounds clearly existed for his recusal, and Brossette's request for an impartial judge was not based on mere allegations, for the record contains ample factual basis supporting Brossette. Judge Waddell, leading up to the contempt hearing, expressed he was "aggravated," "upset," "slighted," and "offended" as a result of Brossette's actions—all valid reasons (*i.e.*, his bias, prejudice or interest) indicating that Judge Waddell should have recused himself from considering the contempt charges he imposed against Brossette. Those reasons are evident in the various proceedings before the trial court—the record is replete with instances demonstrating Judge Waddell's bias.

For instance, at the September 9, 2019 hearing, a judgment committing M.M. still had not been entered. At that hearing on the commitment, the trial court was also addressing Brossette's motion to dismiss the commitment proceeding, and Judge Waddell stated:

> I'm aggravated in this case, very aggravated. It has been fouled up from the first part. And Mr. Brossette, I am very upset with your actions in this case[.]

Then, Judge Waddell went through a brief chronology of the proceedings, before elaborating:

> Bottom line is I said bring her in and give Mr. Sale notice. It wasn't anything arbitrary. It wasn't misunderstood. It could not have two connotations. It was as blunt as it could be. And y'all just said, "To heck with that. Let the judge say what he wants. We're going to do what we want." That's the way I feel about it.

He went on:

> So I'm caught in a dilemma. Do I get aggravated with the way the case has been handled? And my first thought when I read

11

it this morning was I was going to continue everything to Thursday morning and give you 24 hours to get her body up here and have a hearing, and at the end of the hearing I'm going to have a contempt hearing for complete defiance of my orders and direct contempt of the court[.] But bottom line is, I'm upset. It's never been done to me. Never have I had that done to me, and I am upset over it.

At that point, Alice Landry, an LDH attorney from Acadiana, interjected her explanation as to the reasons behind Brossette's handling of the commitment. Judge Waddell considered Landry's explanation, and responded:

> My problem is I told Mr. Brossette—and I've know[n] him for years. I don't like to get on any attorney. But I specifically said I want this done, and you didn't do it. And I said I want this done, and you didn't do it. And then you filed the motion to dismiss so you wouldn't have to do it. To me, that just was a slap in the face for my direct order, not my indirect order.
>
> ****
>
> When I was practicing law, if the judge said something, I may not like it, I have the right to appeal and I have the right to ask for a writ. But I don't have the right just to ignore it or to do what I want and that's in essence what the department did here, period—the department and/or Mr. Brossette, or Mr. Brossette and/or the department—because the net effect is, it was.

After some discussion on the record between Judge Waddell, Landry, and Sale, an agreement was reached that once M.M.'s mental condition was stabilized, she would resume with the services from OCDD. Towards the conclusion of the hearing, Judge Waddell revisited the issue of Brossette's alleged contempt, commenting:

> I don't have an axe to grind. I hope we all learned from it. But I am—I realize I'm a dinosaur and I realize I'm on the tail-end of my career, but I also believe in the dignity of the court. And if the judge—and I know this is a far-fetched deal, but when I was practicing law, if the judge told me to do cartwheels out there, I physically couldn't do it. But you bet your you-know-what I would have tried to do the cartwheel in there. I just wouldn't have gone on by and done something else or moved.

And I feel slighted or offended. I think the dignity of this court has been slighted by that. I really do. And I think it can be corrected in the future, but that's the way I feel.

Judge Waddell's frustration was further apparent at the September 11 hearing when he explained to Brossette:

If you want to have a hearing on it, we will have a hearing on it, but I don't know what I'll do after the hearing. Because I was really upset when I read your first motion, and I was even upset before we had our hearing. And I have cooled down a little bit, but I still think it was a blatant disrespect for the order of the Court.

Considering the record in this case, Judge Waddell erred in failing to recuse himself. The basis of Brossette's motion was not mere conclusory allegations; in fact, this matter was the perfect storm for recusal (*i.e.*, Brossette's actions and omissions in light of Judge Waddell's orders). As a result, the record clearly indicates Judge Waddell's impartiality on the underlying issue. As stated herein, Judge Waddell made several statements at the various hearings leaving no doubt his opinion regarding Brossette's actions culminating in a contempt charge against the lawyer. In the commitment hearings leading up to the contempt hearing, Judge Waddell informed all involved that he was "aggravated," "upset," "slighted," and "offended" as a result of Brossette's actions. Judge Waddell's reaction shown by his statements on the record indicate not only an actual bias, but an objective bias and interest in the outcome of the contempt charge. *See*, *Daurbigney v. Liberty Pers. Ins. Co.*, 2018-929 (La. App. 3 Cir. 5/9/19), 272 So. 3d 69.

Notably, Judge Waddell's irritation in this matter was most probably justified, and this opinion is not to say that Brossette was ***not*** in constructive contempt of court. However, considering the palpable and

13

unmistaken aggravation and offense Judge Waddell felt regarding Brossette's actions, it was an abuse of discretion not to have recused himself from personally considering those charges which he imposed. See, *In re Merritt*, 391 So. 2d 440, 444 (La. 1980), where the La. Supreme Court, citing *Kidd*, noted, "Considering not only the possibility of actual bias on the part of the trial judge, but also the possibility of the appearance of bias, it would be better for the appearance of justice for another judge to try the instant charge of contempt."

Since *Kidd*, and the revision of La. C.C.P. art. 151, two other circuits have addressed the recusal of a judge when, specifically, a constructive contempt charge was the underlying issue. In *In re Eleanor Pierce Stevens Living Trust*, 229 So. 3d 36 (La. App. 3 Cir. 2017), a new trustee was suing a prior trustee regarding the administration of a trust. The prior trustee failed to comply with the trial court's judgment, and the new trustee requested the trial court hold him in contempt. There was a hearing on the contempt issue. But before a judgment was rendered on the contempt, the prior trustee filed a motion to recuse, alleging the trial court judge and the new trustee's attorney had had *ex-parte* email communications. The motion to recuse claimed the trial court judge's action revealed bias. The motion to recuse was denied. In reviewing the failure to recuse, the Third Circuit looked to art. 151 "which provides an exclusive list of mandatory grounds for the recusal of a judge." Ultimately and after consideration of the record, the Third Circuit found the claim for recusal to be without merit and did not recuse the trial judge. *Id.* at 48.

In *State v. Gibson*, 95-2297 (La. App. 4 Cir. 01/19/96), 668 So. 2d 449, a lawyer was charged with constructive contempt for making a

disparaging comment about a trial judge. The lawyer filed a motion to recuse arguing that previously the trial judge had presupposed he was guilty of contempt and would be incarcerated. Later, the trial court denied the motion to recuse, and considered the constructive contempt charge— finding the lawyer in constructive contempt. The lawyer appealed, and argued the applicability of La. C. Cr. P. art 671 (the criminal code counterpart to art. 151). The Fourth Circuit considered the pertinent transcripts regarding the interaction between the trial judge and the lawyer to see if there was a showing of any bias, prejudice or personal interest. In fact, the Fourth Circuit looked at *Kidd*, and said "the factors" that led to *Kidd* were ***not*** shown in the instant case. *Id.* at 451. Thus, considering the record, it found the trial court had not erred in failing to recuse himself.

Finally, as a result of Judge Waddell's error regarding his failure to recuse, we pretermit review of the substance of the trial court's judgment. Were Brossette's actions merely confusion in the process and inadvertent mis-lawyering or intentional constructive contempt? That issue should not have been considered by Judge Waddell and shall be considered by an impartial judge at the trial court.

**CONCLUSION**

Considering the foregoing, we reverse the trial court's judgment as it pertains to the denial of Edward Brossette's motion requesting an impartial judge. The sentence and conviction on the charges of constructive contempt are set aside, and the case is remanded for a new trial in

15

accordance with the provisions of La. C. Cr. P. art. 24 before a judge other than Judge Robert Waddell.

**JUDGMENT DENYING MOTION FOR IMPARTIAL JUDGE IS REVERSED; SENTENCE ON CONSTRUCTIVE CONTEMPT SET ASIDE; MATTER REMANDED FOR FURTHER PROCEEDINGS.**

**GARRETT, J., concurring.**

I concur in the result. Under the unique circumstances presented here, the constructive contempt proceedings initiated by Judge Waddell should have been heard by another judge.

The matter comes before us in a rather unusual posture because the only brief filed with this court was on behalf of Mr. Brossette. The record on appeal consists of three volumes, which is unusually large for a judicial commitment proceeding. Judge Stephens has provided a very cogent explanation of the events leading up to the contempt adjudications. I would merely add that it is clear from reviewing the lengthy record that Mr. Brossette was not well-versed in commitment proceedings. It appears that the instant case was the first one he had ever filed. At least three of the many court proceedings held in this matter were conducted at Brentwood Hospital, where M.M. was hospitalized. Presumably, this was done as an accommodation to the hospital, so the patient would not have to be transported to the courthouse. This accommodation requires that the judge and court staff (bailiff, court reporter, and minute clerk) travel from the courthouse to the facility to conduct court. Mr. Brossette's lack of knowledge of commitment procedures necessitated numerous trips to Brentwood Hospital by the judge and court staff. Judge Waddell's growing frustration with Mr. Brossette's actions is understandable under these circumstances.

Judge Stephens's opinion contains many of the comments made on the record by the court during the protracted proceedings which reflect the strong feelings and frustration on the judge's part. After first finding Mr. Brossette in direct contempt, the court then instituted the written *Rule Nisi*

for Contempt of Court, which ordered Mr. Brossette to show cause why he should not be held in constructive contempt. The grounds in both contempt matters appear to be the same. In response to the Rule, another attorney, appearing on behalf of Mr. Brossette and the Louisiana Department of Health, filed a lengthy brief and a "Motion for an Impartial Judge." After the motion was denied, the second contempt proceeding was summarily considered and Judge Waddell adjudicated Mr. Brossette guilty of constructive contempt.

Under prior jurisprudence in this state, recusal motions have generally been regarded with disfavor, starting out with a strong presumption in favor of the judge sought to be recused. The moving party, under our past jurisprudence, would then have the heavy burden of proving the judge sought to be recused had "actual bias" if the only ground for recusal was bias under La. C. C. P. art. 151(A)(4). *Daurbigney v. Liberty Pers. Ins. Co.*, 2018-929 (La. App. 3 Cir. 5/9/19), 272 So. 3d 69. As noted in *Daurbigney*, this required subjective proof of actual bias. Under current jurisprudence from the United State Supreme Court, the Louisiana Supreme Court, and various appellate courts of this state, there is a due process analysis that should be considered in recusal matters and it appears that an objective test is now employed. The objective standard articulated by Louisiana courts in recent decisions provides:

> Recusal is required when, objectively speaking, the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.

*See e.g. State v. LaCaze,* 2016-0234 (La. 3/13/18), 239 So. 3d 807, *cert. denied*, 139 S. Ct. 321, 202 L. Ed. 2d 218 (2018); *State v. Daigle*, 2018-0634 (La. 4/30/18), 241 So. 3d 999; *Daurbigney v. Liberty Pers. Ins. Co.*,

2

*supra*, *Menard v. Menard*, 2019-580 (La. App. 3 Cir. 3/11/20), 297 So. 3d 82; citing *Rippo v. Baker*, ___ U.S. ___, 137 S. Ct. 905, 197 L. Ed. 2d 167 (2017). Applying this standard, on this record, objectively speaking, the probability of actual bias is too high to be constitutionally tolerable.

I do not believe that it is necessary for us to imply that Judge Waddell was actually biased and not impartial, as suggested by Judge Stephens's opinion. In my view, this case presents one of those rare situations contemplated by our Louisiana Supreme Court in the *Kidd* case, where the contempt proceedings should be considered by another judge for the appearance of justice due to the strong feelings expressed on the record. Further, this record objectively shows that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. The case *sub judice* is clearly the type of situation envisioned by both *Kidd* and the newer cases cited above which articulate the objective due process test.

I agree that the case needs to be remanded for a new hearing before another judge and, therefore, I concur in the result.