612 So.2d 990 (1993)
George S. HASKINS, Sr. and Pat Haskins, Plaintiffs-Appellants,
v.
STATE FARM FIRE & CASUALTY COMPANY, Mr. and Mrs. Donald Oglesby and Elizabeth Parker, Defendants-Appellees.
No. 24317-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
*991 M.F. "Rick" Fayard, Jr., Bossier City, for plaintiffs-appellants.
Cook, Yancey, King & Galloway by Charles G. Tutt, Shreveport, for defendants-appellees-State Farm and Mr. and Mrs. Parker.
Lunn, Irion, Johnson, Salley & Carlisle by James A. Mijalis, Shreveport, for defendant-appellee-Elizabeth Parker.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
HIGHTOWER, Judge.
In a tort action stemming from the felonious homicide of their son, plaintiffs appeal the granting of an adverse summary judgment. For the reasons hereinafter expressed, we affirm.

FACTS AND PROCEDURAL HISTORY
On January 12, 1988, Marlon Wallace, then 17 years old, shot and killed George S. "Shad" Haskins, Jr., age 16, in a remote wooded area near Keithville, Louisiana.[1] During the previous day, the malefactor informed two friends, Paul Wile ("Wile") and Sean Parker ("Parker"), that he could not pay a small debt owed Shad and therefore planned to shoot him. Unfortunately, these two individuals made no effort whatsoever to inform the indicated victim, or any responsible adult, of the statement. That inaction resulted, they say, from believing Wallace to be under the influence of controlled dangerous substances, and their consequential failure to consider his words genuinely a threat.
Within a year of their son's death, George S. Haskins, Sr. and Pat Haskins filed suit naming several defendants: Dr. and Mrs. Donald Oglesby in their capacity as parents of Wile;[2] their insurer, State Farm; Elizabeth Parker as the mother of Parker; and her insurer, Aetna Casualty. In their original petition, plaintiffs alleged that the defendants' two sons "owed a duty to disclose what they knew of Wallace's murder plot and were negligent by their failure to disclose Wallace's plot to kill Haskins to Haskins himself or any adult or law enforcement [sic] officer." Defendants, arguing that no lawful remedy exists for the failure to warn of potential third party criminal activity, filed exceptions of no cause of action. The trial court sustained these objections in April 1989, but allowed the Haskinses fifteen days to amend their petition.
Subsequently, in addition to reiterating the original assertions, plaintiffs revised their petition to include allegations that Wile and Parker "encouraged, conspired with, aided, abetted and assisted Wallace to plan, execute and cover-up the murder of Haskins and, therefore, are liable for Haskins' death." Defendants then moved for summary judgment, relying upon certain documents in support of their position. Deciding that such exhibits consisted primarily of inadmissible unsworn statements, the trial court denied the presented motions, *992 yet noted that relief could be sought later upon more adequate substantiation.
After obtaining the depositions of Wile, Parker, and the investigating officer, Lt. Edwin Bostwick, defendants again filed motions for summary judgment. Eventually, pointing to the absence of a legal obligation to warn of the threat and, also, to the lack of admissible evidence that the two minors in question participated in the killing, the trial court dismissed plaintiffs' demands with prejudice. From that disposition, this appeal ensued.

DISCUSSION
Of course, a motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; American Bank v. Saxena, 553 So.2d 836 (La.1989); Hartford Accident & Indemnity Co. v. Joe Dean Contractors, Inc., 584 So.2d 1226 (La.App. 2d Cir.1991). The burden of proof is on the mover to establish there are no genuine issues of material fact; only when reasonable minds must inevitably concur is summary judgment warranted. American Bank, supra; Hartford, supra. Indeed, the mover's pleadings, affidavits, and documents are to be closely scrutinized while those of the opponent are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981); Hartford, supra.
Here, at the hearing on the motions, the facts before the trial court can be characterized as uncontradicted. Although Wallace told him of his plans to kill Shad Haskins over a debt of approximately $30, and additionally sought his assistance, Wile stated in his deposition that he declined to act upon that request. Indeed, rather than actually believing his friend, whom he had never known to act violently, Wile thought the remarks constituted a joke instead of a threat. Further, even after accomplishing the gruesome deed, Wallace could not convince Wile of his actions.
Parker, also privy to the same conversation, likewise failed to place any credence in the announced plot. Although denying any participation in the shooting, he acknowledged his assistance in later hiding the gun. Yet, even in extending such aid, he did not realize their young friend had in fact been shot. To the contrary, Parker assumed that Wallace sought such assistance in concealing the .22 caliber rifle merely to avoid parental discipline for taking the weapon without permission.
Within the record, only Lt. Edwin Bostwick of the Caddo Parish Sheriff's Office rejected these statements, expressing his suspicions that the two youngsters in question probably participated in the homicide much more than they admitted. Nonetheless, when pressed on the subject, he acknowledged a lack of evidence to prove his theory. According to the results of the investigation, Wallace shot Shad Haskins while acting alone. Nothing established that Wile or Parker actually assisted in the killing. In fact, the officer based his opinions solely on the pair's failure to inform the victim, or any adult, of the purported threat.
In disputing the district court's determinations, appellants suggest that we consider a statement given by Wallace in late December 1990. That document, however, is not properly before this court. Two months, or more, after the dismissal of their suit, plaintiffs filed a Petition to Annul Judgment Obtained by Fraud, attaching the killer's statement in an effort to prove a conspiracy. Subsequently, upon defendants' motion, the trial court struck that pleading and its attachments from the instant record.[3] Although this document is now found attached to plaintiffs' brief, appellate briefs are not part of the record, and facts referenced therein, but not contained in the record, cannot be considered. D'Arbonne Bank & Trust Co. v. James, 597 So.2d 165 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1000 (La.1992).
*993 So then, in view of the denials by Parker and Wile, and the fact that Lt. Bostwick's speculations are unsupported by either his personal knowledge or any other evidence, we cannot say that the trial court erred in finding that defendants' two sons did not assist or conspire with Wallace concerning the killing. Thus, we next consider whether the pair owed a duty to warn Shad, or a responsible adult, of Wallace's announced criminal plans.
Whether a legal duty is owed by one party to another depends upon the facts and circumstances of the case and the relationship of the parties. USF & G v. Hi-Tower Concrete Pumping, 574 So.2d 424 (La.App. 2d Cir.1991), writ denied, 578 So.2d 136 (La.1991). Duty constitutes a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La. 1984); Jones v. Johnson, 572 So.2d 150 (La.App. 1st Cir.1990), writ denied, 576 So.2d 519 (La.1991). It is well settled that there is no duty to control, or warn against, the criminal actions of a third person so as to prevent him from causing physical injury to another, unless some special relationship exists to give rise to such a duty. Harris, supra; L.P. v. Oubre, 547 So.2d 1320 (La. App. 5th Cir.1989), writ denied, 550 So.2d 634 (La.1989); Smith v. Howard, 489 So.2d 1037 (La.App. 1st Cir.1986). Courts traditionally have found such relationships to exist between parent and child; employer and employee; carrier and passenger; innkeeper and guest; shopkeeper and business visitor; restaurateur and patron; jailer and prisoner; and teacher and pupil. See and compare Strickland v. Ambassador Insurance Co., 422 So.2d 1207 (La.App. 1st Cir. 1982); 57A Am.Jur.2d Negligence § 109 (1989).
Here, the facts disclose none of these traditional special relationships; therefore, no legal duty existed for defendants' sons to warn Shad Haskins. Furthermore, based on the depositions, Wile and Parker neither believed Wallace's threats nor had previously known him to be violent. Typically, where the alleged wrongful conduct is a failure to act or "nonfeasance," a definite relationship is required before social policy justifies the imposition of a duty to act upon the defendant. Fox v. Board of Supervisors, 576 So.2d 978 (La.1991). Thus, we agree with the trial court that there should be no duty imposed on friends to warn one another when there is an unbelieved threat of potential criminal activity by a third person.

CONCLUSION
Accordingly, for the foregoing reasons and at appellants' cost, we affirm the granting of summary judgment.
AFFIRMED.
NOTES
[1] Although not expressly disclosed by this record, Wallace is now apparently incarcerated after pleading guilty to some form of negotiated homicide charge.
[2] As Dr. Oglesby is neither the natural nor adoptive father of Paul Wile, plaintiffs later consented to his dismissal from the suit.
[3] Plaintiffs indicate in brief that a separate nullity action has now been filed.