PITMAN, J.
Plaintiffs-Appellants Kary Carroll, individually and on behalf of the minor children "ZC" and "DC" (collectively, the "Carrolls"), appeal the district court's granting of summary judgment in favor of Defendants-Appellees Allstate Insurance ("Allstate") and Randy B. Odom and Loretta Odom (collectively, the "Odoms"). For the following reasons, we affirm.
FACTS
On April 13, 2015, the Carrolls filed a petition for damages for personal injuries against the Odoms and their homeowners' insurer, Allstate.[1] Kary Carroll is the father of the minor children DC (date of birth July 5, 2001) and ZC (date of birth March 31, 2004) and is divorced from the children's mother, Cindy Williams. The Carrolls alleged that on April 12, 2014, ZC was injured while at the home of the Odoms, his maternal great-aunt and great-uncle.[2] Ms. Williams was present as it was her weekend for visitation with her children. ZC, DC and other children were jumping on a trampoline, which had missing springs and holes in the mat, that was located in the Odoms' backyard. The children were not supervised by any adults because the adults were inside the house. As the children jumped, ZC fell on the trampoline, causing other children to fall on him, resulting in ZC being injured. He was taken to the emergency room and was diagnosed with a left radius fracture and an ulna middle shaft fracture. He underwent surgery that day to close the fractures and install titanium pins. The pins were later removed during surgery in January 2015. ZC was unable to play baseball for the spring and summer seasons and experienced nightmares as a result of the accident. The Carrolls argued that the accident was caused by the negligence of the Odoms in that they failed to arrange for and provide proper operating equipment in the form of the trampoline, which served as an attractive nuisance to the children; failed to arrange for adequate security for the children as they played on a dangerous piece of equipment which the Odoms knew or should have known was an attractive nuisance and not safe for children; and failed to properly supervise the children as they played on the trampoline. The Carrolls alleged that as a result of the accident, ZC suffered from mental pain *774 and anguish; medical pain and suffering; past, present and future medical expenses; and past, present and future treatment expenses. They further alleged that Mr. Carroll and DC, as ZC's father and brother, suffered from loss of love, loss of companionship, loss of society and loss of consortium and services.
On November 15, 2015, the Odoms and Allstate filed an answer. They admitted that ZC was playing at the home of the Odoms, but denied that the trampoline was in any way defective or unreasonably dangerous. They further denied that the Odoms had any obligation to supervise the children because the children's mother, Ms. Williams, was present. They also denied that the trampoline was the cause of the accident and contended that the accident was caused by the activities of DC and ZC, who were not being properly supervised by their mother. They further contended that the Carrolls failed to mitigate their damages. They also pled the comparative fault of Ms. Williams and asserted that they are entitled to a setoff in the event they are assessed any fault.
On September 26, 2016, the Odoms and Allstate filed a motion for summary judgment. In a memorandum in support of their motion, they set forth their statement of facts, formed from the depositions of Ms. Williams, DC and ZC. According to Ms. Williams's deposition, she and Mr. Carroll married in November 2000 and divorced in March 2014, one month prior to the accident at issue. They had joint custody of DC and ZC, and Mr. Carroll was the domiciliary parent of the children. She had custody of DC and ZC every other weekend, including the weekend of the accident. The Odoms are the aunt and uncle of Ms. Williams. On the day of the accident, Ms. Williams took her sons to the Odoms' house for a visit. They owned a trampoline at their home, and DC and ZC had jumped on their trampoline more than 20 times in the past. She noted that the trampoline "was in good shape." Prior to the accident, she told her sons, on more than one occasion, to be careful on the trampoline, to take turns jumping and not to roughhouse. On the evening of the accident, DC, ZC and their cousin were playing on the trampoline while she was washing dishes in the kitchen and watching the children through a kitchen window. She looked away for a moment and, when she looked back up, she heard crying. She went outside and discovered that ZC's arm was injured. DC told his mother he was afraid he would get in trouble because he lifted ZC up and dropped him on his arm. According to DC's deposition, he and ZC had played on the Odoms' trampoline more than 20 times before the day of the accident. At the time of the accident, he was playing on the trampoline with ZC and their cousin while their mother was inside the house and was watching them through the kitchen window. DC picked up ZC and told him he was "going to body slam him," but did not intend to do so. DC's hand slipped out from under ZC, and DC dropped ZC. ZC fell on his left arm. This occurred while DC and ZC stood in the center of the trampoline mat. DC noted that there were three or four springs missing on the trampoline and that there was no netting around the trampoline, but that these factors did not have anything to do with losing his grip on his brother. DC stated that the fact that he was standing on a trampoline rather than standing on the ground did not have anything to do with him dropping ZC. According to ZC's deposition, he had jumped on the Odoms' trampoline more than 20 times before the day of the accident. When the accident occurred, he and his brother were "messing around" on the trampoline, and DC picked him up, but accidentally dropped *775 him. He tried to catch himself, but landed on his arm.
The Odoms and Allstate set forth the standard for summary judgment and contended there were no genuine issues of material fact in this matter. They stated that the Carrolls failed to show any negligence on the part of the Odoms. They explained that parents are responsible for the delictual actions of their minor children and are under a duty to properly supervise and protect them. They contended that the Odoms had no duty to supervise DC and ZC and that their mother, who was present at the home, was responsible for the supervision of her children when the accident occurred. They noted that although Ms. Williams was inside the house, she was able to watch her children through a kitchen window as they played on the trampoline. They also argued that because ZC's injury resulted from horseplay between him and DC, the Odoms did not breach any duty owed as the landowners. They contended that the injury did not result from any alleged defect on the property owned by the Odoms or from any alleged defect in the trampoline. They noted that DC admitted that the accident could have occurred on solid ground. They contended that the injury that resulted from horseplay could have occurred in many locations and that there was no proof that the trampoline played any part in the injury. Therefore, the Odoms and Allstate argued that there was no negligence on the part of the Odoms, and the matter should be dismissed with prejudice.
On November 14, 2016, the Carrolls filed an objection and response to the motion for summary judgment. In a memorandum in support of their objection, they argued that the Odoms had a duty to make the premises of their home reasonably safe for those present. They contended that had the children been properly supervised, the body slam attempt and resulting injury could have been avoided. They submitted an affidavit from Mr. Carroll, in which he stated that the Odoms should have supervised DC and ZC because they knew or should have known Ms. Williams could not and would not supervise the children. He stated that Ms. Williams suffers from alcohol and controlled substance abuse and that the Odoms were aware of this abuse. He further stated that he did not allow the children to jump on trampolines because DC broke his leg in a trampoline accident when he was five years old. He noted that the children did not have health insurance.
On November 17, 2016, the Odoms and Allstate filed a reply memorandum in support of their motion for summary judgment. They emphasized that because they did not have a duty to supervise the children and did not breach any duty as landowners, they should be dismissed from this litigation, along with Allstate. They noted that there was no evidence that Ms. Williams was not competent to supervise her children and that the evidence showed that she was watching her children. They also stated that there was no evidence that the trampoline caused the accident and that the evidence showed that the horseplay between DC and ZC caused the accident.
A hearing on the motion for summary judgment was held on November 28, 2016. Counsel for both parties presented the arguments previously set forth in their memoranda in favor of or in opposition to the motion for summary judgment. The district court addressed the safety of the Odoms' home. It noted that there were no allegations that the trampoline was defective, other than that it was missing a few springs, which in no way contributed to the injury. It stated that the trampoline did not turn over, collapse or split, causing the child to hit the ground; but, instead, it *776 functioned as designed. It determined that the accident was caused by DC and ZC "playing too rough" and that the accident could have occurred standing on grass. The district court emphasized that the main issue is whether there was proper supervision of the children and who owed that duty of supervision. It noted Mr. Carroll's allegations that Ms. Williams had a drinking and/or drug problem in the past, but stated that no allegations had been made that she was inebriated at the time of the accident. It declined to transfer responsibility of the children from a parent to a third party when the parent was present. It further stated that had a court previously determined that Ms. Williams was not competent and was required to have supervised visitation with her children, the court's analysis might be different. It addressed the Carrolls' argument that the trampoline was an attractive nuisance, noting that this is not a trespass case and that the children were not attracted to the property because of the trampoline. It stated that the children were allowed to jump on the trampoline with permission from their mother, and it is the responsibility of the mother, not the great-aunt and great-uncle, to determine in what activities a child can participate. Following the hearing, it filed a judgment granting summary judgment in favor of the Odoms and Allstate and against the Carrolls, dismissing the claims of the Carrolls with full prejudice and at their costs.
The Carrolls appeal the judgment of the district court.
DISCUSSION
Duty of the Odoms
In their first assignment of error, the Carrolls argue that the district court erred when it summarily held that no duty was owed to a minor guest by the Odoms at their home when a parent of the minor guest was present. They contend that the Odoms did owe a duty to ZC at their home even though his mother was present. Citing La. C.C. art. 2317, they contend that individuals are responsible for the damage occasioned by the things in their custody; therefore, the Odoms are responsible for the injuries sustained from the trampoline in their custody. They note that although parents are required to properly supervise and protect their children, this duty does not absolve a landowner of a duty owed.
Allstate and the Odoms argue that the Odoms did not breach any duty owed as landowners because the injury resulted from horseplay between DC and ZC, not from any alleged defect on the property.
A motion for summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Appellate courts review summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Lowery v. Wal-Mart Stores, Inc. , 42,465 (La. App. 2 Cir. 9/19/07), 965 So.2d 980.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Posecai v. Wal-Mart Stores, Inc. , 99-1222 (La. 11/30/99), 752 So.2d 762. Whether a duty is owed is a question of law. Id. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. Seals v. Morris , 410 So.2d 715 (La. 1981) ; Lowery v. Wal-Mart Stores, Inc. , supra . No duty to protect against or control the actions of a third party exists unless a special relationship exists to give rise to such a duty.
*777 Mosley v. Temple Baptist Church of Ruston, La., Inc. , 40,546 (La. App. 2 Cir. 1/25/06), 920 So.2d 355. Courts traditionally have found such relationships to exist between parent and child; employer and employee; carrier and passenger; innkeeper and guest; shopkeeper and business visitor; restaurateur and patron; jailer and prisoner; and teacher and pupil. Haskins v. State Farm Fire & Cas. Co. , 612 So.2d 990 (La. App. 2 Cir. 1993). Parents and other custodians have a duty to supervise a child to prevent injury to the child and others. Mahlum v. Baker , 25,876 (La. App. 2 Cir. 6/24/94), 639 So.2d 820. Landowners owe a duty to plaintiffs to discover any unreasonably dangerous conditions and to either correct the condition or warn of its existence. Eisenhardt v. Snook , 08-1287 (La. 3/17/09), 8 So.3d 541.
La. C.C. art. 2317 states that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." The article notes that this statement is to be understood with modifications. La. C.C. art. 2318 sets forth such a modification and states, in part, that "[t]he father and the mother are responsible for the damage occasioned by their minor child."
The Odoms as landowners did not owe or breach a duty in this case. The injury to ZC was not caused by an unreasonably dangerous condition at their home. The trampoline was not defective, and it functioned as designed. DC and ZC both testified in their depositions that ZC's injury was caused by horseplay between them. Although this horseplay occurred on the Odoms' trampoline, the trampoline did not cause the injury.
Further, the Odoms did not have a duty to supervise their grand-nephews. Ms. Williams, who was present at their home with DC and ZC, had a duty to supervise her children as they played.
Accordingly, this assignment of error lacks merit.
Level of Supervision
In their second assignment of error, the Carrolls argue that the district court erred when it summarily held that the level of supervision for the injured child was proper. They contend that the level of supervision for ZC at the Odoms' home was not proper. They further contend that homeowners have a duty to make the premises of their home reasonably safe for those present, even when a child's mother is present. They also note that the weekend the accident occurred was Ms. Williams's first weekend to have visitation with her children; therefore, the Odoms should have been more attentive to the supervision of the children. They assert that, as demonstrated in Mr. Carroll's affidavit, the Odoms were aware that Ms. Williams could not and would not properly supervise the children.
Allstate and the Odoms argue that the district court was correct in determining that the Odoms were not negligent. They contend that they did not have any duty to supervise the minor children because their mother was present. They note that there is no evidence that Ms. Williams was not competent to supervise her children and that the court in the family law proceeding awarded her visitation rights.
As discussed above, the Odoms had no duty to supervise DC and ZC; Ms. Williams, as the children's mother, had a duty to supervise them. Mr. Carroll's allegation of Ms. Williams's past substance abuse does not impose a duty to supervise on the Odoms. There is no evidence that Ms. Williams was not competent to supervise her children. The record demonstrates that the accident occurred while Ms. Williams was exercising unsupervised visitation *778 with her children and that she was watching her children through the kitchen window as they played in the yard.
Accordingly, this assignment of error lacks merit.
Attractive Nuisance
In their third assignment of error, the Carrolls argue that the district court erred when it summarily ruled that the trampoline at the home of the Odoms was not an attractive nuisance. Allstate and the Odoms argue that the trampoline had nothing to do with the accident; therefore, the attractive nuisance argument has no merit.
The attractive nuisance doctrine requires that the condition or agency causing injury must be of such an unusual nature or character as to render it peculiarly attractive to children. McFann v. Sw. Power Elec. Co./AEP , 40,384 (La. App. 2 Cir. 12/14/05), 916 So.2d 1277.
ZC's injury was caused by horseplay between DC and ZC, not by the trampoline. Therefore, the attractive nuisance doctrine does not apply to the facts of this case.
Accordingly, this assignment of error lacks merit.
Location of Injury
In their fourth assignment of error, the Carrolls argue that the district court erred when it summarily ruled that the injury could have occurred standing flatfooted on the ground in a bed of grass. It is their contention that ZC's injury was caused by the trampoline and could not have occurred standing on the ground.
Allstate and the Odoms argue that the injury could have happened on solid ground and that there is no proof that the trampoline played any part in the injury.
As discussed above, ZC's injury was caused by horseplay between him and ZC, not by the trampoline. DC testified in his deposition that while standing on the trampoline, he picked up ZC, but then lost his grip, causing ZC to fall on his arm. DC admitted that standing on the trampoline, rather than standing on the ground, was not relevant to him dropping ZC. Although DC and ZC were on the trampoline when the injury occurred, the trampoline did not cause the injury. Further, any alleged defects to the trampoline, e.g., missing springs, are irrelevant to the accident.
Accordingly, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the district court's granting of summary judgment in favor of Defendants-Appellees Allstate Insurance, et al., and against Plaintiffs-Appellants Kary Carroll, individually, and on behalf of the minor children ZC and DC, is affirmed. Costs of appeal are assessed to the Carrolls.
AFFIRMED .

The Carrolls also named as defendants "John Does 1-10."

As will be explained more fully below, the allegations set forth in the petition as to how the accident occurred were later shown to be inaccurate. The depositions of DC and ZC referenced below contain a completely different description of what happened.